In the Matter of the Application of the ATTORNEY-GENERAL for an Order for the Examination of Witnesses under the Provisions of Chapter 383 of the Laws of 1897.

THEODORE E. HANCOCK, Attorney-General of the State of New York, Appellant; ROBERT M. OLYPHANT and Others, Respondents.

*Examination of witnesses — a proceeding by the Attorney-General, under chapter 383 of 1897, is a special proceeding — an appeal lies to the Appellate Division — the action of the justice is judicial — insufficiency of the petition.*

A proceeding by the Attorney-General, under chapter 383 of the Laws of 1897, an act designed to prevent monopolies in articles or commodities of common use, for an order for the examination of witnesses for the purpose of determining whether an action should be commenced under the act, is a special proceeding within the meaning of sections 3333 and 3334 of the Code of Civil Procedure, and an appeal will lie under the provisions of section 1356 of that Code from an order vacating the order for the examination.

The duty imposed upon the Supreme Court justice to whom the Attorney-General applies, of determining whether the application shall be granted, is judicial in its nature, and it is, therefore, within the power of the Legislature to devolve such duty upon the justice.

Where the application by the Attorney-General alleges upon information and belief the existence of an illegal combination to limit the production of anthracite coal, and that certain persons have knowledge of such alleged illegal agreement; that he deems it necessary and proper to procure the testimony of such witnesses before beginning any action, but does not state the sources of the information upon which his belief in the various matters alleged is based, nor state the facts and circumstances rendering the examination material and

necessary, or the names and residences of the parties, and the nature of the contemplated action, nor give any reason for such omission, an order granting the application will be vacated at the instance of the parties sought to be examined.

The fact that the application states "that it is not practicable to set out with greater particularity any of the matters required by article 1, title 3, chapter 9 of the Code of [Civil] Procedure on like applications," does not, in view of the fact that the reason why it is not practicable is not stated, excuse the omission.

LANDON, J., dissented.

APPEAL by Theodore E. Hancock, Attorney-General of the State of New York, from orders of the Supreme Court, made at Chambers and respectively entered, in the office of the clerk of the county of Albany, on the 14th day of July, 1897, the 23d day of July, 1897, and the 18th day of August, 1897, vacating and setting aside an order made for the examination of certain witnesses under the provisions of chapter 383 of the Laws of 1897.

The first order appealed from granted a motion made by Samuel Sloan to vacate an order previously made for the examination of said Sloan and others, under the provisions of chapter 383 of the Laws of 1897. The three other orders were granted upon similar motions made by R. M. Olyphant, J. R. Maxwell and T. P. Fowler respectively. The opinion delivered in granting the motions is reported in 21 Miscellaneous Reports, 101.

*Theodore E. Hancock, Attorney-General,* and *J. Newton Fiero,* for Attorney-General, appellant.

*David Willcox* and *Lewis E. Carr,* for Robert M. Olyphant, respondent.

*David McClure,* for Samuel Sloan, respondent.

*David Willcox,* for Thomas P. Fowler, respondent.

*De Forest Brothers,* for J. Rogers Maxwell, respondent.

MERWIN, J.:

The first question to be determined is whether there is any right of appeal to this court from the orders in question. The claim of the respondents is that the proceeding under the statute of 1897 is not a special proceeding within the meaning of the Code of Civil Procedure, and that, therefore, there is no remedy by appeal.

By sections 3333 and 3334 of the Code of Civil Procedure it is provided that the word "action," when applied to judicial proceedings, "signifies an ordinary prosecution in a court of justice by a party against another party for the enforcement or protection of a right, the redress or prevention of a wrong or the punishment of a public offense," and that "every other prosecution by a party for either of the purposes" above specified is a special proceeding. By section 1356 of the Code it is provided that an appeal may be taken to the Appellate Division from an order affecting a substantial right made by a justice of the Supreme Court in a special proceeding instituted before him pursuant to a special statutory provision.

Here is a special statutory provision that in form gives to the Attorney-General a right to examine witnesses. In this proceeding he seeks to enforce that right against these respondents. It is, I think, a special proceeding within the meaning of the provision giving the right of appeal. (See *Matter of Ryers*, 72 N. Y. 1, 4; *Matter of Cooper*, 22 id. 67, 87.)

Coming, then, to the consideration of the appeal, we are met at the threshold of the case with the proposition of the respondents that the justice had no right to entertain the application of the Attorney-General for the reason that the duty imposed by the act upon the justice was not of a judicial character.

Very evidently it was the intention of the Legislature to impose a duty upon the justice similar in its character to that imposed upon a justice by the provisions of the Code in relation to depositions taken before or after the commencement of a suit. (§§ 870–886.) It can hardly be claimed that the action of the justice under those provisions is not of a judicial character. So, by other provisions of the Code (§ 914 *et seq.*), a justice may be called upon to act with reference to depositions taken within the State for use without the State. I am not aware of its being held that a justice had no right to perform the duty imposed by those provisions. There are many statutory provisions by which, upon investigations by public bodies of matters of public interest, the attendance of witnesses may be enforced by order or summons obtained from a justice of the Supreme Court. In practice the duties that may be imposed upon justices of the Supreme Court are regarded as quite varied, as may be illustrated by the provisions of many statutes requiring certifi-

cates of incorporation to be approved of by them, and the statute giving them power to take acknowledgments of conveyances.

By the act in question a written application is to be presented to the justice, complying, so far as practicable, with certain provisions of the Code, and it must appear to the justice that the order for examination is necessary. He may require notice to be given and may grant a preliminary injunction as may appear to him to be proper or expedient. The justice was thus called upon to pass judgment upon the application as presented and determine whether the applicant was entitled to the relief he asked. He was called upon to construe and apply the law, and that is the peculiar province of the judicial department. (Cooley Const. Lim. [6th ed.] 109.)

The fact that the effect of the proceeding may be to aid an administrative or executive officer in the discharge of a duty imposed upon him by law does not change the character of the action of the justice. (*Brimson Case*, 154 U. S. 447, 487.) In that case the Federal authorities, mainly relied on by the counsel for the respondents, are discussed, and it is quite apparent that they do not apply to a case like the present.

In *Matter of Cooper* (*supra*) Judge SELDEN (at p. 84) states as the principle, to be deduced from the authorities which he cites, "that where any power is conferred upon a court of justice, to be exercised by it as a court, in the manner and with the formalities used in its ordinary proceedings, the action of such court is to be regarded as judicial, irrespective of the original nature of the power."

The act in question did not, I think, impose upon the justice a function of a non-judicial character.

The next question is whether the application or petition of the Attorney-General was upon its face sufficient to entitle him to the benefit of the law.

In the petition, after a reference to the provisions of the act, it is stated, " upon information and belief, that heretofore certain railroad and other corporations, foreign and domestic, entered into a certain alleged illegal contract, arrangement, agreement or combination limiting the production of anthracite coal." It is then stated by the petitioner that " he deems it necessary and proper to procure the testimony of the following witnesses before beginning any action or

proceeding in reference to the matters above set forth, as provided for by said  *  *  *  chapter 384* of the Laws of 1897," then giving the names and residences of six persons; "that your petitioner is informed and believes that such persons have knowledge and information as to such illegal contract, and is desirous of examining said persons under oath for the purpose of determining whether an action or proceeding should be commenced under such acts, against any person, trustee, director, manager or other officer of a corporation, *  *  *  foreign or domestic, and of examining and procuring the testimony of persons hereinbefore named as witnesses under the provisions of such act;  *  *  *  that it is not practicable to set out with greater particularity any of the matters required by article 1, title 3, chapter 9 of the Code of Procedure on like applications."

It is not stated why it is not practicable to set out more fully the matters required by the Code.    The act provided that the provisions of article 1 above referred to should apply " so far as practicable." Under those provisions it must appear that the testimony desired is material and necessary; and under rule 82 of the Supreme Court Rules the affidavit must specify the facts and circumstances which show that the examination is material and necessary.   An affidavit must be presented setting forth, among other things, the names and residences of the expected parties, the nature of the expected controversy, and the circumstances which render it necessary for the protection of the applicant's rights that the witnesses' testimony should be perpetuated.   (*Matter of Ketchum's Application*, 60 How. Pr. 154.)   There must be reasonable ground to believe that the application is in good faith.   The granting of the order is somewhat in the discretion of the judge.   (*Jenkins* v. *Putnam*, 106 N. Y. 272.)   In the case cited it is said the judge must be able to see from the facts stated that the testimony is material and necessary.   The right to make an examination is purely statutory, and the provisions of the statute must be followed.   (*Balcom* v. *Adams*, 18 N. Y. St. Repr. 13; *Heishon* v. *Knickerbocker L. Ins. Co.*, 77 N. Y. 278.)

In the petition in the present case no reason is given why it is not practicable to state the names and residences of the expected parties.

*383.— [REP.

The information is not stated upon which a belief is founded that an alleged contract has been entered into, or the information upon which a belief is founded that the witnesses named have any knowledge or information as to such illegal contract, or that the testimony desired is material and necessary, or the facts showing such necessity and materiality. The sources of information are not given. Allegations on information and belief, without stating the sources of information, are as a rule disregarded.

By section 5 of the act of 1897 it is provided that, "if it appears to the satisfaction of the justice of the Supreme Court to whom the application for the order is made, that such an order is necessary, then such order shall be granted." In the petition no facts are stated from which the judge would be authorized to arrive at the conclusion that the order was necessary. The petitioner states that he deems it necessary and proper to procure the testimony of the persons named, and that he is desirous of examining them for the purpose of determining whether an action should be commenced under the act. The opinion and desire of the petitioner is not enough. If that was all that was necessary to entitle the petitioner to the order, the judicial action of the judge would be minimized to a greater extent than it can be assumed that the Legislature intended. By making the provisions of the Code, in relation to depositions taken before suit, applicable (*People ex rel. Commissioners* v. *Banks*, 67 N. Y. 569), an intention is apparent to provide for these examinations the same safeguards that are deemed to be necessary for the ordinary examinations of that character. It was not designed to make the duty of the judge a clerical one, or require him to act upon the demand simply of any officer.

The petition was, I think, fatally defective in failing to state facts sufficient to authorize a determination by the justice that the order was necessary, as well as in failing to comply with provisions of the Code, and not showing any reason why it was not practicable to do so.

Having reached the conclusion that the petitioner did not by his petition show that he was entitled to the benefit of the statute, assuming the statute to be legal, it is not necessary to consider the challenges made by the respondents to the validity of the act itself upon constitutional grounds.

It follows that the order for examination was properly set aside and that the orders appealed from should be affirmed.

PUTNAM, J., concurred; PARKER, P. J., concurred in result; HERRICK, J., concurred as stated in his opinion; LANDON, J., dissented.

HERRICK, J.:

I concur with Justices LANDON and MERWIN in the conclusion that they have reached, that the Legislature has power to confer upon a justice of the Supreme Court authority to issue an order like the one in question, and that the power so conferred is a judicial power.

I also concur with Mr. Justice MERWIN in the conclusion that he has reached, that the affidavit of the Attorney-General is insufficient under the statute.

I cannot concur with Mr. Justice LANDON in holding that a witness cannot question the constitutionality of the act, or the legality of the proceedings by which it is proposed to bring the witness before the court or referee. This is not a case where the witness raises a question as to whether the party subpœnaing him has or has not a case, but where he raises the question as to whether the law under which the proceedings are taken is or is not in fact a valid law, and also whether the proceedings to bring him before the court or referee have been legally taken under such law, just as he might question the regularity of attachment proceedings brought against him to compel his attendance in court in any action.

Compelling a person to attend before a court or magistrate and give evidence is a restriction upon that person's liberty of action, but when done pursuant to the law of the land is unobjectionable and is a necessary interference with the liberty of the person for the purpose of the due administration of justice, and is for the common good of all. But every person has a right to insist that he shall not be taken from his lawful pursuits and restricted in his freedom of action except by lawful authority; hence, he is permitted to question whether a statute, under whose authority it is proposed to interfere with his liberty of action, is a valid or void statute, whether in fact it constitutes a part of the law of the land, and also to question whether, assuming it to be a law, the proceedings

against him have been duly and regularly taken, and the raising of such questions by him is not interfering with the merits of the case or determining whether the party subpœnaing him has or has not a good cause of action.

The majority of the court having reached the conclusion that the order herein was properly vacated because of the insufficiency of the moving papers, and, hence, it being unnecessary to discuss the other questions raised in this case, under the well-settled rules of the court that a question of the constitutionality of a statute will not be passed upon unless necessary for the decision of the case, I refrain from discussing those questions, although it is to be regretted that the substantive parts of the statute under which these proceedings are taken are not passed upon.

LANDON, J. (dissenting):

The Attorney-General by his petition, presented to Justice CHES-TER, stated, " upon information and belief, that heretofore certain railroad and other corporations, foreign and domestic, entered into a certain alleged illegal contract, arrangement, agreement or combination, limiting the production of anthracite coal."

By chapter 383, Laws of 1897, every person or corporation entering into such an arrangement, agreement or combination within this State is guilty of a misdemeanor, and the Attorney-General is authorized to bring an action in the name of the People of the State against any one or more of them to restrain the execution thereof. To assist him in obtaining the necessary facts to enable him to bring and prosecute the action, the act furnishes him, under leave of a justice of the Supreme Court, with the right to " examine and procure the testimony of witnesses in the manner" therein prescribed. The Attorney-General, as we see from the 5th section of the act, must first deem " it necessary or proper to procure testimony before beginning any action or proceeding under this chapter." This fact is stated in his verified petition, and this statement is sufficient evidence of it. His next step is to " present to any justice of the Supreme Court an application in writing for an order directing such persons as the Attorney-General may require to appear before a justice of the Supreme Court, or a referee designated in such order, and answer such relevant and material questions as may be put to

them concerning any alleged illegal contract, arrangement, agreement or combination in violation of this chapter." The Attorney-General did present such application to Justice Chester, naming therein the persons he required to be examined.

The next step is to be taken by the justice of the Supreme Court. "If it appears to the satisfaction of the justice of the Supreme Court to whom the application for the order is made that such an order is necessary, then such order shall be granted."

Thus the justice had before him the verified application of the Attorney-General that certain railroad and other corporations had made the prohibited contracts, and that the Attorney-General deemed it necessary, before beginning the action authorized by the statute, to procure the testimony of the persons named in the application. The justice granted the order. We infer that it did appear to his satisfaction that such order was necessary.

This proceeding is an inquest by the People of the State through their Attorney-General, under leave of their judicial department, as to alleged violations of their legislative enactment, forbidding monopolies in the production or sale of articles or commodities in common use. It is authorized by statute, to the end that the violators, if any be found, may be restrained from further violation. The object of the enactment is to protect the People against such rapacious abuses as extort from them unconscionable prices for necessary supplies. The proceeding has some analogy to the inquest by grand jury in criminal cases. The preliminary inquiry precedes the prosecution, and, unless it tends to justify it, must result in preventing it. The People thus seek to guard themselves from undertaking an unfounded or unreasonable prosecution, and to guard the suspected, not only from undergoing it, but from the injury resulting from the official declaration of suspicion.

It is not enough that the Attorney-General, the highest law officer of the State, deems it necessary to procure testimony before beginning the action; it must also appear to the satisfaction of the justice of the Supreme Court, to whom the Attorney-General applies for the order, that the order is necessary. The judicial sanction must give life and force to the People's request. To contend that this judicial sanction is not a judicial act involves such a contradiction, in terms, that the contention may be dismissed as self-refuting. As

is said in the brief of one of the respondents' counsel, the judge " is to exercise his judgment."

I think that the argument drawn from cases (*Hayburn's Case*, 2 Dall. 409; *Todd's Case*, 13 How. [U. S.] 52; *Ferreira's Case*, Id. 40; *Gordon's Case*, 117 U. S. 697; *Sanborn's Case*, 148 id. 222) to the effect that the justices of the Supreme Court of the United States cannot be required to sit as commissioners to certify pension, war or other claims for the consideration of the other departments of the government, and revision by them, or to review any decision of an inferior tribunal, which is not binding *ex proprio vigore*, does not here apply, for the reason that the order here under review needs no other sanction than the judicial one it has received.

The act is remedial in its intent, and, therefore, must be liberally construed, to the end that its benign purposes may be accomplished, if possible, and not defeated. Its safeguards against improvident action should not be perverted into weapons for its nullification.

The respondents object that the petition ought to have set out further particulars, such as are required by the provisions of article 1, title 3, chapter 9 of the Code of Civil Procedure. (Code Civ. Proc. § 872.) The 4th section of chapter 383 of the Laws of 1897 does declare that such provisions, " so far as practicable," shall apply to this proceeding. But the Attorney-General states in his petition " that it is not practicable to set out with greater particularity any of the matters required." We must assume this to be true. It is practicable to apply the provisions of the Code when a case can be made to fit them, but, if the Attorney-General has not yet obtained facts enough to make such a case, then the provisions are not applicable to the case he seeks to present.

The main objection under this head is, that the corporations against which it may be found proper to proceed are not named by the Attorney-General in his application for the order. But why should names be given before the inquiry discloses whether any should be named at all? If some should be named and others not, why hazard, by the premature nomination of many, those which the inquiry may fail to accuse? Besides, the inquiry may inculpate others than those now suspected, and exculpate some or all that the Attorney-General suspects. This is an inquest and not a trial; it is upon the part of the whole People, and not between private parties.

The private party may well be supposed to know whom he intends to sue, and thus to be able to name him, and to be able also to state the particulars required by section 872 of the Code. His field is usually so narrow that his interest will suffice to its full exploration, but the action which this proceeding contingently contemplates, if undertaken at all, must, from the diffuse generality of the plaintiff and possibly from the nature of the action itself, lack the benefit of individual search, and thus have the greater need for an official one. In criminal cases the People need the free inquiry which the grand jury makes; here the need is supposed to be much the same, and this act is some attempt to meet the need. It may be a legislative novelty — wise, or unwise, experience will show — but it appears to be within legislative competency, remedial in its intent, and, therefore, not to be hampered by narrow judicial construction. It is clear that the act intended that this proceeding might be had, whether the provisions of the Code as to practice were applicable or not, and we assume that the representations of the Attorney-General touching what it was impracticable to set forth were entitled to respectful consideration. It would be unreasonable to hold that an application to acquire information as to facts is defective because the facts sought are not stated in it.

The objection that section 4 of the act violates article 3, section 17, of the Constitution of the State, because it declares the provisions of the Code applicable without inserting them in the act itself, seems to be answered by *People ex rel. Commissioners* v. *Banks* (67 N. Y. 568). If we should hold the objection valid, we might thence be constrained to hold that the Attorney-General could safely disregard that portion of the section.

It is objected that this is an inquisition into the private affairs of private citizens. The proposition assumes what is not shown to be true, and thus presents a speculative or moot question, which the court must refuse to consider. If, upon the examination of any witness, it shall be objected that the questions asked him are obnoxious to any such rule, the court may need to consider, what is the rule; and, having settled that matter, then to consider whether the questions asked infringe upon it. The questions must be asked before they can be intelligently considered or passed upon. The rule as to an inquiry into private affairs may be as broad as counsel for the

respondents contend, and the Attorney-General never ask a question in violation of it. This proceeding looks to the combinations of corporations, and seems remote from an odious inquisition into the private affairs of the witness. If it ever should reach that phase, the court may have to decide whether the witness can conceal his private affairs when the public interests require their disclosure. Section 5 of the act limits the answers to "relevant and material questions." We may assume the court will decide aright when the facts require its decision.

So it is objected that the witness may be compelled to make answer tending to criminate himself. Another moot question which may, for the reasons already adduced, be dismissed as such.

The act (§ 7), however, provides: "The testimony given by a witness in a proceeding or examination under this act shall not be given in evidence against him in any criminal action or proceeding, nor shall any criminal action or proceeding be brought against such witness on account of the testimony so given by him, nor shall any person be excused from answering any questions that may be put to him on the ground that it may tend to *convict* him of a violation of the provisions of this act." I cannot foreknow what questions will be asked, or what or whether answers will be given or refused, and, of course, cannot foresee how such answers would tend to convict the witness. The statute forbids their use for the purpose. It seems to me, in the absence of an actual test, that since the answers cannot be so used they cannot so tend.

Section 8 of the act provides that the examination is to be had before a referee, who is vested with the power to punish a witness for contempt "for non-attendance, or refusal to be sworn, or to testify, or to produce books, papers and documents   *   *   *   in the same manner, and to the same extent, as a referee appointed to hear, try and determine an issue of fact or of law." Laws, to be enforcible, must prescribe the means of enforcement, and thus this provision is within legislative competency, unless prohibited by some constitutional restriction. It is said that the referee is a mere administrative or executive officer, and that the Legislature cannot vest him with the judicial power to punish for contempt, within the opinion in *Brimson's Case* (154 U. S. 447). But "the judicial power of the United States shall be vested in one Supreme Court and in such

inferior courts as the Congress may, from time to time, ordain and establish." (U. S. Const. art. 3, § 1.) Of course, Congress could not vest any part of that judicial power in any other body. There is no corresponding provision in the State Constitution. The State provision that the Supreme Court has "general jurisdiction in law and equity". (Art. 6, § 1) is the less of an approximation to the Federal provision, because section 3 of the same article provides that "the Legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised." I see no constitutional restraint upon the power of the Legislature to confer upon a referee power to punish for the contempt committed in respect to his judicial orders in the matter pending before him. A referee, under our system, is not a mere administrative or executive officer, with respect to the issue or matter referred to him, unless the law authorizing his appointment, or the order appointing him, withholds or fails to confer judicial powers. (Code Civ. Proc. § 1018.) But until the referee shall proceed to punish a witness the question is not a judiciary one.

It is urged that the witness may be deprived of his liberty without due process of law. If the referee has judicial power that objection will fail. Section 8 prescribes the practice to be pursued by the referee, and that has long been recognized as requiring due process of law. It is true that the referee may err, but error is incident to every jurisdiction. The best that can be done in such cases is to resort to the remedies provided by our judicial system, such as habeas corpus, certiorari or appeal, as the case may require. When judicial error prejudices the case of the accused, he may suffer much in his hard struggle to rectify the error. We have not yet discovered how it can be helped. The unfortunate victim must resort to the remedies that are open to him. It is not to be doubted that, should any one of these respondents find himself in a strait betwixt obedience to the statute and punishment for contempt, he could avail himself of every resource which the Constitution and the laws afford. Nor could the referee foreclose any one of them against him, not even that of the legislative competency to vest him with such judicial power. And so this question may also be postponed until events give it birth.

It is said that we cannot review this order. If that is true then this proceeding, and possibly the act itself — important as it is — are apparently strangled upon the threshold, and that, too, upon the application of witnesses, not of parties in interest. We should not assist in this attempt, except upon clear conviction that we cannot do otherwise. I think we should hold that this is a "special proceeding instituted before him (the justice) pursuant to a special statutory provision," and is, therefore, appealable. (Code Civ. Proc. § 1356.)

Various objections are made to the constitutionality of the act itself, and that hence the People can establish no case against the corporations. Was it ever heard before that a witness could object in advance that the party subpœnaing him had no case? One party or the other usually fails in every litigation, but the failing party, nevertheless, is permitted to adduce his testimony through his witnesses. The right to sue, short of doing it maliciously, is a common one. Every party may conduct his side of his case. It may be conceded that the witnesses in effect determine it, but they do this from the witness stand, not along the journey thereunto. Is it for the witnesses to say that the combinations specified in the act are legal? That is a question to be determined between the parties. Suppose it should be determined between the witnesses and the People, adversely to the corporations in this proceeding, and thereafter against the corporations themselves, upon the doctrine of *stare decisis*, could not the corporations justly complain that their cause was prejudged, or at least prejudiced in an *ex parte* proceeding, before the real parties in interest were heard? Let the real parties in interest contest the main question when their actual interests hinge upon it. Here it is a mere speculative or academic question. What is it to these witnesses whether the questions suggested by counsel will ever be raised by the parties, or, if ever raised, how they may be answered? It is necessary that the witnesses should appear and answer in order to raise the question at all, for, unless the People's charge of a forbidden combination can be established by witnesses, the questions which now seem to be interesting may never pass beyond the academic forum.

The grave constitutional questions which the corporations may possibly raise hereafter are not now before us. Not until a case

·shall be presented in which these questions shall assume such a form that the judicial power is capable of acting of upon them, can the court authoritatively decide them.

I advise that the order appealed from be reversed, and the proceeding be remanded to Justice CHESTER for such further order as is needed in execution of his original order.

Orders appealed from affirmed, with ten dollars costs and disbursements in each appeal.