492

(55 App. Div. 245.)

PEOPLE ex rel. MORSE v. NUSSBAUM et al. PEOPLE ex rel. AMERICAN
ICE CO. v. SAME. In re DAVIES, Atty. Gen.

(Supreme Court, Appellate Division, Third Department. November 20, 1900.)

WITNESSES—EXAMINATION BEFORE SUIT—APPEALABLE ORDER.

An order granted ex parte for the examination of witnesses under
Laws 1899, c. 690, denouncing monopolies in articles of common use, and
authorizing the attorney general, about to commence an action to restrain
the consummation of any combination prohibited therein, to apply for an
order directing persons named to appear and answer such questions as
might be put to them, and produce papers, etc., is an order in an action
within provisions of the Code authorizing appeal from an order in an
action.

Parker, P. J., and Merwin, J., dissenting.

On the Merits.

1. DISCOVERY—WITNESSES—EXAMINATION BEFORE SUIT—MATERIALITY OF TES-
TIMONY—MONOPOLIES.

Where an application for the examination of witnesses under Laws 1899,
c. 690, denouncing monopolies in articles of common use, and authorizing
the attorney general, about to commence an action to restrain the consum-
mation of any contract or combination prohibited therein, to apply for
an order directing persons named to appear, and answer such questions
as might be put to them, shows that two foreign corporations sold the
majority of their stock to another foreign corporation, which had already
secured a certificate to do business in the state, and that the contracts by
which such alleged illegal combination was perfected had been consum-
mated months before the application, there was nothing to "restrain," and
hence the application did not show, as required by the act, that the testi-
mony of the witnesses was material and necessary. By Kellogg, J.

2. MONOPOLIES—VACATION OF CERTIFICATE OF CORPORATION.

The remedy provided by the act did not embrace an action to vacate the
certificate allowing the combined corporations to do business within the
state. By Kellogg, J.

3. DISCOVERY—EXAMINATION BEFORE TRIAL.

Though the statute should be construed liberally, the order for the exam-
ination is not justified for the purpose of gratifying public curiosity, or
furnishing food for scandal, or aid to a criminal prosecution, but only in
cases where the necessity is apparent from what is disclosed in the appli-
cation. By Kellogg, J.

4. SAME—EXEMPTION FROM SELF-INCRIMINATION—TIME TO OBJECT.

A witness may plead his exemption from self-incrimination to an appli-
cation, before action brought, to take his testimony, and need not wait
until the incriminating questions are put to him.

5. SAME.

Though the act attempts to grant immunity for all offenses on account
of any transaction concerning which the witness may testify, yet since
it cannot grant immunity as against a federal law, and such combination
being also denounced by Act Cong. 1890, c. 647, the act is within the
constitutional exemption from self-incrimination, so far as respects testi-
mony of parties to such combination concerning it. By Smith, J.

6. SAME—ENCROACHMENT ON JUDICIARY BY LEGISLATURE.

The act is unconstitutional, since it attempts to coerce the justice of the
supreme court into granting the order without the exercise of any judicial
discretion, it providing that "it shall be the duty of the justice to whom
such application for the order is made to grant such application"; and
hence the proceeding is not a judicial one, and a witness imprisoned for
not appearing or answering before it is deprived of his liberty without
due process of law. By Parker, P. J.

Appeal from special term.

Application by the people, on the relation of Charles W. Morse, for a writ of prohibition against Myer Nussbaum, an alleged referee, and John C. Davies, attorney general of the state of New York. Application by the people, on the relation of the American Ice Company, for a writ of prohibition against Myer Nussbaum, an alleged referee, and John C. Davies, attorney general of the state of New York. In these cases the writ was denied, and relators appeal. 66 N. Y. Supp. 129. Petition of John C. Davies, attorney general of the state of New York, for an order directing Scott and others to appear before a referee for examination pursuant to chapter 690 of the Laws of 1899. Motion to dismiss appeal refusing to vacate the order made on the 28th day of May, 1900. appointing the referee, and directing appellant to appear before him, denied. Order so appealed from reversed, with $10 costs and disbursements, and motion to set aside order appointing referee granted. Orders made at special term setting aside the writs of prohibition reversed, with $10 costs and disbursements, on the ground that the court erred in holding that the special term had no power to grant the writs, and that the merits were not involved. Application to this court for writs of prohibition in each of the cases denied, with $10 costs and disbursements in each case.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Daly, Hoyt & Mason (David Wilcox and William H. Rand, Jr., of counsel), for appellants.

John C. Davies, Atty. Gen. (Edward P. Coyne, of counsel), for respondent.

KELLOGG, J. This motion to dismiss is made upon the ground that the order is not appealable to this court, and In re Attorney General, 155 N. Y. 441, 50 N. E. 57, is cited by respondents in support of the motion. That case held that a similar order to this was not a final order in a special proceeding, and therefore not appealable to the court of appeals; that in fact it was not a special proceeding in which the order was made. The court of appeals had previously held that no order in an action, whether final or otherwise, was appealable, as a matter of right, to the court of appeals (Van Arsdale v. King, 155 N. Y. 325, 49 N. E. 866); hence the appeal to that court was dismissed. Had the appeal been duly certified to that court, the result might have been different. The only appeal from an order, unless duly certified, which that court can entertain according to its own construction of the law, is an appeal from a final order in a special proceeding. Haight, J., in the case cited (155 N. Y. 444, 50 N. E. 58), says:

"The distinguishing between orders in actions and special proceedings may at times be attended with some difficulties. An order for an examination of a witness before trial, but after action has been brought, is clearly an order in the action. Lamp Co. v. Brigham, 1 App. Div. 490, 37 N. Y. Supp. 402. But it is said that such an order issued before action brought is not an order in the action, for the reason that no action is pending; and that, if it is not an order in an action, it must be a special proceeding. We cannot indorse this contention. Many orders are made by judges out of court preliminary to the bringing of an action, including the provisional remedies, orders for the publication of the summons, substituted service, and leave to bring actions when such are required by the provisions of the Code. In this case the attorney general, as he tells us, intended to bring an action. Preliminary thereto he

sought the order in question for the purpose of obtaining the information upon which he proposed to base his action. It was a step in his proposed action, preliminary thereto, it is true, but becoming a part of the proceedings in this action as soon as the action should be brought."

I think it may be a fair conclusion from this reasoning that the order was an order in an action as the Code contemplates. While it may not be apparent how the order or the testimony to be taken under it ever can become "a part of the proceedings in the action as soon as the action should be brought," since the law provides that the testimony taken shall be filed with the county clerk, but does not provide that in any case it can be used in the action, still, if it is to serve no useful purpose in the intended action, and the only purpose of the provision is the gratification of curiosity on the part of the public, or the furnishing of food for scandal, or evidence for some criminal prosecution, that would go far in condemnation of the law creating this new procedure. But, assuming that this authorized procedure was intended to serve some lawful and useful purpose,—such, for instance, as the furnishing of facts and information in aid of the framing of a complaint,—I think it must be regarded as a step in an action, and is as clearly an order in an action as the order authorized by section 873, directing the taking of the testimony of a party before an action is commenced. What disposition is to be made of the testimony is not to be taken as controlling in determining whether or not it is an order in an action. The Code of Civil Procedure classifies all civil remedies under two heads, "Actions" and "Special Proceedings," and sections 3333 and 3334 define what belongs in each class. None others are treated of. But I think this question as to whether this order is appealable to this court was decided by this court in Re Attorney General, 22 App. Div. 285, 47 N. Y. Supp. 883. That matter arose under provisions of a law similar to the one here considered, and must be taken as the judgment of this court until a reversal is had on the exact question determined. It is true that this court determined then that the order was made in a special proceeding, and the court of appeals, for the purpose of determining whether it was appealable to the court of appeals, held that it was not an order made in a special proceeding; but the court of appeals did not determine that it was not an order made in an action. The right to appeal to the appellate division from an order made in a special proceeding is not greater, or based upon other grounds, than the right to appeal from an order made in an action. An appeal from an order made in a special proceeding must be "from an order affecting a substantial right," and an appeal from an order in an action is given "when it affects a substantial right." This court, in entertaining that appeal, decided that the order did affect a substantial right. And if I am right in the conclusion that this is an order in an action, there is no question of affecting a substantial right undetermined, and there is no occasion to discuss the matter on that ground. The great abuses to which the inquisitorial powers delegated by laws of this character might lead show a necessity for some judicial supervision

by way of appeal. I quote the language of Landon, J., in his dissenting opinion (In re Attorney General, 22 App. Div. 298, 47 N. Y. Supp. 892), as fitly expressing the need of the power to review such orders: "It is said we cannot review this order. If that is true, then this proceeding, and possibly the act itself, important as it is, are apparently strangled upon the threshold." But the right to review when the order denies the application can be no greater than when the order grants it. The appellant here is to be made a party to the action to be brought by the attorney general, and the other party is to be "the people," who apply for the order. There is to be a contest, an action, and these litigants are in preparation. The order sought for is to be used in forging a weapon for attack. These preliminary preparations are by the law to have at their inception judicial sanction, and, like all other orders, the right of review by appeal seems eminently proper, and contemplated by the Code of Civil Procedure.

The motion to dismiss the appeal must be denied, with $10 costs and disbursements. All concur, except PARKER, P. J., and MERWIN, J., who dissent.

KELLOGG, J. Chapter 690 of the Laws of 1899 is chapter 383 of the Laws of 1897, modified only as to mode of procedure. The first three sections of both laws are the same. Section 1 declares, in substance, that contracts which create monopolies in articles of common use are illegal, and against public policy. Section 2 makes the entering into such contracts punishable by fine and imprisonment. Section 3 provides that the attorney general may bring civil actions to "restrain and prevent" the making of such contracts. Concerning these provisions no one raises a question. The sections following these three in both acts relate to a method of procedure by the attorney general touching the civil actions which section 3 authorizes him to bring, and it is respecting these and the action of the attorney general under them that the controversy on this appeal arises. As before said, the law of 1899 changed the law of 1897 only in respect to this method of procedure. This fact may be important in seeking the true intent of the legislature as declared in the law now in force—the law of 1899. The changes especially noticeable are these: The law of 1897 (section 4) provided that "article one of title three of chapter nine of the Code of Civil Procedure relating to the application for an order for the examination of witnesses before the commencement of an action and the conduct of such examination shall apply so far as practicable." This is left out of the law of 1899, and in words the law of 1899 (section 4) declares that those provisions shall not apply. Under the law of 1897 the application authorized to be made to a justice of this court was for an order directing answer to "relevant and material questions as may be put to them" (witnesses). The application and order now authorized by the law of 1899 is that they "answer such questions as may be put to them or to any of them." Under the act of 1897 (section 5) it is provided that, "if it appear to the satisfaction of the justice

of the supreme court to whom the application for the order is made that such an order is necessary, then such order shall be granted." The law of 1899 (section 4) reads: "And it shall be the duty of the justice of the supreme court to whom such application for the order is made to grant such application." And further provides: "The application for such order made by the attorney general may, simply show, upon his information and belief, that the testimony of such person and persons is material and necessary;" and further provides that "the order shall be granted by the justice of the supreme court to whom the application has been made with such preliminary injunction or stay as may appear to such justice to be proper and expedient." Giving a literal construction to the wording of this law, it will be apparent that the only occasion where it is permitted that the justice may exercise any judicial discretion is in granting a preliminary injunction or stay, "as may appear to such justice to be proper and expedient." Although the legislature has taken such pains to make here its intent apparent, I cannot believe it really intended to make this feature of the law ineffectual by the coercion of judicial discretion, or making the justice to whom the application is presented simply a scrivener to subscribe his name. If the function is a judicial one, the legislature could not use it, or decide for the court; if it does not call for the exercise of a judicial function, the legislature could not impose the duty, nor could the justice discharge it. Section 873 of the Code of Civil Procedure provides that the justice "must" grant the order there mentioned; but in Jenkins v. Putnam, 106 N. Y. 272, 12 N. E. 613, Earl, J., said:

"While it is said in section 873 that the judge 'must' grant the order, * * * yet we do not think the language is absolutely mandatory, and that it was intended to deprive the judge of all discretion. * * * If, from the nature of the action and the other facts disclosed, he can see that the examination is not necessary for the party seeking it, then it cannot be supposed that it was the legislative intent that he should be obliged nevertheless to make the order."

This reasoning, and the need of relieving this part of the law from the charge of being repugnant to the constitution, requires that the apparently mandatory language of this law "that it shall be the duty of the justice * * * to grant it" should be construed to mean that it is the duty of the justice to grant the order in case the application or petition, read as a whole, discloses that the examination of the witnesses is necessary for the purposes named in the act. In other words, the petition or application, in the language of the act itself, must "show * * * that the testimony of such person and persons is material and necessary," or the order must be refused. So interpreted, the act in this respect affords a reasonable freedom in the exercise of judicial discretion on the part of the justice, and there is no coercion. What is necessary for the petition to set forth in order to "show" the necessity for the testimony of the witnessses is not affected by article 1, tit. 3, c. 9, of the Code of Civil Procedure, nor does the statement in this act that such provisions shall not apply in any way affect it. Obviously, in order to

move the judgment of the justice to whom the application is made to grant the order, such matters and facts must be presented as, by the ordinary rules, will, when weighed in the judicial scales, move to a judicial conclusion that the "testimony of such person and persons is material and necessary." So it is apparent that, whatever safeguards may have been removed by eliminating the provisions of article 1, tit. 3, c. 9, of the Code, the one material and essential safeguard—the judicial discretion to be moved by the facts stated in the petition—still remains, and this should be sufficient for the protection of the rights of all parties and persons to be affected by the order.

In reading the application made to the justice in this case it will be seen that these prominent facts are stated, viz.: That two foreign corporations, owning property in this state and property in the state of Maine, sold, or the stockholders of these corporations sold, the majority of the stock of each to another foreign corporation, the American Ice Company; that thereafter this last-named company secured the certificate required by the corporation laws of this state, and thereby became legally entitled to own property and do business in this state; that the contracts or agreements whereby the American Ice Company secured the majority of stock of the two other corporations, and whereby it became the owner of and entitled to manage the property and the business theretofore owned and managed by the other two corporations, were accomplished facts some months before the application was made for this order to examine witnesses. So, also, was the certificate issued before such application, giving to the American Ice Company the right to do business in this state. The petition states that on March 11, 1899, the American Ice Company "acquired title to more than ninety per cent. of the total capital stock of the said Knickerbocker Ice Company and the Consolidated Ice Company." The application for this order was made in May, 1900, more than a year after all the alleged agreements were consummated. It may be here necessary to refer to the laws of this state whereby one corporation may lawfully own and vote the stock of any other corporation doing a similar business, and we may assume that the laws of Maine and of New Jersey also authorize such ownership, for there is nothing in the petition to the contrary. Neither is it necessary, in the disposition of this appeal, to discuss the question as to when, if ever, under the existing law, it will be possible to prevent the exercise of this lawful right to own and vote the stock of other corporations in the same line of business, even though the indirect result of such ownership and management tends to place a commodity or article in common use largely or entirely in the hands of a single corporate body; for I do not think that question is properly here for determination, nor was it before the justice to whom application for this order was made. We have to do here only with the binding provisions of the law of 1899 touching the procedure to get testimony of witnesses, bearing in mind that the petition states that all the obnoxious agreements have been made already, and the title to the property is fixed in the American Ice Company. Every-

thing has been consummated.  We must conclude from what is set forth in the petition that through the outlay and management of the American Ice Company, either through its own directors or through the directors of the other two corporations whose stock it owns, the ice crop in the winter of 1899 and 1900 was gathered, and at the time of this application was being disposed of.  The effect of all this, as the petition shows, was to create in the American Ice Company an ownership or practical monopoly in the disposal of this article of common use in the New York market, and, as a result of such ownership and power of disposal flowing directly from the power to own the stock of other corporations, the price of this article has been increased, and the consumers have been made to pay whatever the owner has found it profitable to ask.  And I think it may be conceded, for the purpose of disposing of this appeal, and the real question which lies at the threshold, that the consummated agreements stated in the petition are repugnant to the provisions of the law of 1899 touching contracts creating, or tending to create, monopolies in articles of common use.  The question here relates to the remedy. If the American Ice Company, or any other person or corporation, has unlawfully offended against these provisions, the offense is criminal, and the law provides a penalty, and so the act declares.  With that we have nothing to do.  But what remedy by a civil action is possible in such a state of facts?  The only remedy of this nature which the law contemplates is purely preventive,—preventive of the formation and consummation of such agreements.  The act (section 3) authorizes only an action "to restrain and prevent" the "making or consummation of any contract," etc.  What, under the facts stated in the petition, can be restrained?  The agreements here set forth are not like the continuing freight agreements of railroads which the interstate commerce act empowered the courts to put an end to by injunction.  There is nothing here which can be put an end to, for there is no continuing contract, nothing but a consummated contract ending practically in ownership.  Would an injunction against a sale by these owners of the ice they own, if such an injunction were lawful, give relief?  The court cannot be permitted to fix the price at which sales may be made, nor can it confiscate the property and distribute it.  I fail to see how any civil action to prevent or restrain would here lie or could be maintained for any purpose whatever in aid of this law.  The petition, however, apparently to overcome this obvious impossibility, says that the action is to be brought "to vacate, annul, and set aside the certificate procured" allowing the American Ice Company to do business in this state.  I have been unable to find any authority for an action having such a purpose.  If such authority does exist, it does not exist through the provisions of the law here considered; nor does this law give to the attorney general the right to an order to examine witnesses for such a purpose.  This law, in the highest degree inquisitorial, and giving an open door to the greatest abuses, should at least be confined strictly within the limits of objects its wording points out.  Since the petition itself makes it plain that the authorized action could not be maintained, it follows

as a matter of course that the petition did not "show that the testi-mony of such person or persons [the witnesses named] is material and necessary" and for the support of a civil action to "restrain and prevent" the consummation of any illegal contract.   The substantial provisions of the law are wholesome, and for the public good; and the principle of construction urged by the learned attorney general, that the method of procedure prescribed in aid of the enforcement of laws of that nature should be liberal, commands approval.   So, also, does the language of Mr. Justice Harlan in the Brimson Case (Interstate Commerce Commission v. Brimson, 154 U. S. 479, 14 Sup. Ct. 1125, 38 L. Ed. 1047):

"We said in Boyd v. U. S., 116 U. S. 616–630, 6 Sup. Ct. 524, 29 L. Ed. 746, —and it cannot be too often repeated,—that the principles that embody the essence of constitutional liberty and security forbid all invasions on the part of the government and its employés·of the sanctity of a man's home and the privacies of his life."

As said by Mr. Justice Field in Re Railway Commission (C. C.) 32 Fed. 241–250:

"Of all the rights of a citizen few are of greater importance or more essen-tial to his peace and happiness than the right of personal security, and that involves not merely protection of his person from assault, but exemption of his private affairs, books, and papers from inspection and scrutiny of others. Without the enjoyment of this right, all others would lose half their value."

Liberal construction of the feature of this law which authorizes an ex parte inquisition into the affairs of this private corporation, or into the private affairs of an individual,—the details of which are to be filed with the county clerk, and become public property,—does not authorize or justify the granting of an order to aid the doing of this for the purpose of gratifying public curiosity, or the furnishing of food for scandal, or for affecting the stock market, or for furnishing aid to a criminal prosecution.   If the order is to be granted at all, it must be in cases only where the necessity is apparent from what is disclosed in the petition or application.   It must be apparent that it is necessary for the sole purpose for which it is authorized.

If I am right in the conclusion that the petition in this case shows upon its face that the testimony of witnesses and inspection of books mentioned were not necessary for the prosecution of the civil action authorized by the law, that no such civil action could be maintained to "restrain or prevent" under the facts disclosed, it will be unneces-sary to consider the other features of this law which appellant urges in condemnation of the law as unconstitutional.   That those ques-tions may be properly raised on this appeal seems to be supported by ample authority.   Trading Co. v. Brown, 27 Hun, 248; Kinney v. Roberts, 26 Hun, 166; Skinner v. Steele, 88 Hun, 307, 34 N. Y. Supp. 748.   These cases hold that a witness or person who is to be made a party need not wait until a question is put to him, and then claim his privilege not to answer, when it is apparent that all the questions and answers sought for in the application would tend to criminate.

The order should be reversed, with $10 costs and disbursements on this appeal, and the motion to dismiss in special term granted, with $10 costs.

SMITH, J. By the constitution, both state and federal, is given to every citizen the right of exemption from self-incrimination. This provision in the federal constitution received construction from the supreme court of the United States in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. It was there held that:

"The meaning of the constitutional provision is not merely that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself, but its object is to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime."

This same construction was adopted by the court of appeals of our own state in People v. Forbes, 143 N. Y. 219, 38 N. E. 303. The statute requiring the witness to testify assumes to grant immunity for all offenses on account of any transaction concerning which he may testify. This provision, comprehensive, and probably effective to protect a witness from prosecutions for offenses against the state law, does not assume to, nor could it, provide immunity for offenses committed under the statute of any other state or of the United States. If, therefore, these witnesses, by their answers, would subject themselves to prosecution for crimes under the federal law, they are entitled to the protection both of the state and federal constitutions. In 1890 an act was passed by congress, and received the executive approval, entitled "An act to protect trade and commerce against unlawful restraints and monopolies." Chapter 647. By that act it was provided that:

"Section 1. Every contract, combination, in form of trust or otherwise, or conspiracy in restraint of trade or commerce, among the several states or with foreign nations, is hereby declared illegal. Every person who shall make any such contract or who shall engage in any such combination or conspiracy shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000 or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

"Sec. 2. Every person who shall monopolize or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states or with foreign nations shall be deemed guilty of a misdemeanor and on conviction thereof shall be punished by fine not exceeding $5,000 or by imprisonment not exceeding one year or by both such punishments, in the discretion of the court."

This act, assuming to regulate interstate trade, while differing somewhat in phraseology from our state statute, is nevertheless aimed at the same evil, and is practically similar thereto. The contract here challenged contemplates the sale in this state of property taken from the state of Maine and the sale in Philadelphia, Baltimore, and Washington of property taken from this state and from the state of Maine. If this contract be obnoxious to our statute, it comes equally within the condemnation of the federal statute. If the contract be vicious, the parties thereto are criminally liable both under our state law and under the federal law. To require these witnesses to swear to any facts which would establish the making of the contract alleged in the petition, or connect them with its making or execution, would, therefore, be an infringement upon the rights as-

sured to them by the constitution.  In Skinner v. Steele, 88 Hun, 311, 34 N. Y. Supp. 751, Martin, J., in writing for a unanimous court in discussing the right to an examination before trial, says:

"The rule is that, if it appears that the only material evidence that can be given by the party sought to be examined will tend to show that he is guilty of a crime, or subject him to a penalty or forfeiture, the order should not be granted; but if it appears that any testimony material to the case may be given not necessarily having that tendency, the examination may be had, and the party left to assert his privilege upon the examination."

The sole basis of the proposed action of the attorney general is the alleged illegality of the contract.  The fact of its illegality is the sole fact to be proven in the action.  The application for a certificate of authority to transact business within the state is proof of an intent to act under the contract sufficient to authorize the proposed action, if the contract be illegal.  The witness sought to be examined is the president of the corporation, presumptively a party to the making, and engaged with the corporation, and in its behalf, in executing, the contract claimed to be criminal.  I can conceive of no possible inquiry material to the controversy which would not call for an answer which would tend to convict the witness of a crime under the federal statute.

If these views be correct, this examination was not properly ordered.  And this question can, I think, be raised by the witness, and at this time.  The witness here asserts his privilege, and demands the constitutional protection.  There is yet no defendant in the action who can protect him.  His right to this relief seems to me clear. See opinion of Herrick, J., in Re Attorney General, 22 App. Div. 291, 47 N. Y. Supp. 883.  It becomes unnecessary, then, to discuss the legality or illegality of the contract alleged in the petition.  Such a discussion would be more profitable when the exact nature of the contract is disclosed than upon general allegations in a petition made upon information and belief.

PARKER, P. J.  I concur in the reversal of the order appealed from in this proceeding on the ground that the duty imposed upon the justices of the supreme court by the statute in question is not a judicial one.  The justice is required to act, not in any judicial proceeding, but as a mere ministerial officer, in aid of the attorney general, and in a matter that is neither an action nor a special proceeding, and in which both the provisions of the statute and the history of its enactment indicate an intent on the part of the legislature to deprive him of all judicial power, and of any information from which he might exercise judicial discretion.  Such a duty, in the performance of which the justice is not given any judicial power, is not one that the legislature may lawfully impose upon him, and his act under it is not to be sustained.  So the referee is not appointed in a judicial proceeding, and is not, and cannot act as, a judicial officer. Imprisonment by such a tribunal for not appearing or answering before it deprives a witness of his liberty without due process of law, and a witness so ordered to appear and answer may at once raise the question whether such an order ought to be sustained.