(32 Misc. Rep. 1.)

PEOPLE ex rel. MORSE v. NUSSBAUM, Referee, et al.

. PEOPLE ex rel. AMERICAN ICE CO. v. SAME.

(Supreme Court, Special Term, Albany County. June, 1900.)

1. WRIT OF PROHIBITION—JURISDICTION.

Under Code Civ. Proc. § 2092, giving the appellate division of the supreme court power to grant an alternative writ of prohibition against a special term or another justice of that court, a special term of the supreme court has no authority to issue such writ to restrain proceedings before a referee appointed by a special term, under Laws 1899, c. 690, for the examination of witnesses respecting the existence of monopolies in trade, since, under Code Civ. Proc. § 1018, the referee takes the place of the court, and exercises substantially all the powers, with reference to the trial, of a court at special term.

2. SAME—TO RESTRAIN MINISTERIAL ACTS.

Under Laws 1899, c. 690, § 4, providing that, whenever the attorney general has determined to commence an action to restrain the consummation of a monopoly in the production and sale of any article, he may present an application to any justice of the supreme court for an order directing the persons named in the application to appear before the justice for examination touching the existence of such monopoly, the duties of the attorney general being purely ministerial a writ of prohibition will not lie against him to restrain his performance of the duties imposed by the statute.

3. CONSTITUTIONAL LAW—IMPOSING NONJUDICIAL FUNCTIONS ON COURT.

Laws 1899, c. 690, § 4, providing that, whenever the attorney general shall present an application for an order requiring the appearance of persons named therein to submit to an examination touching their violation of the provisions of said act against trade combinations, "it shall be the duty of the justice of the supreme court, to whom such application for the order is made, to grant such application," does not impose upon the justices of the supreme court nonjudicial functions.

4. WITNESSES—INCRIMINATING TESTIMONY.

Laws 1899, c. 690, § 6, providing that, upon the examination of persons summoned to appear before a justice of the supreme court touching their violation of the statutes against unlawful combinations in trade, "no person shall be excused from answering any questions that may be put to him, or from producing any books, papers, or documents, on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him, but no person shall be prosecuted in any criminal action or proceeding, or subject to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify," is not unconstitutional, as compelling a witness to give evidence against himself.

5. MONOPOLIES—APPLICATION FOR EXAMINATION OF WITNESSES—SUFFICIENCY.

Under Laws 1899, c. 690, declaring every contract or combination whereby a monopoly in the sale of any article is created, or whereby competition in this state in the supply or price of any article is restrained or prevented, to be against public policy and void, and providing that, when the attorney general has determined to bring an action to restrain such unlawful combination, he may make application to any justice of the supreme court for an order summoning persons named to appear and submit to an examination touching such illegal combination, an application by the attorney general, stating that he has determined to bring an action under the provisions of said act, and that the testimony of the persons mentioned in the application is material and necessary; that certain corporations named, organized under the laws of the state of Maine, and controlling 90 per cent. of the ice supply to the people of the city of New York, had on March 11, 1899, combined their interests, and transferred their property to a corporation organized on said date under the laws of

66 N.Y.S.—9

the state of New Jersey, for the purpose of creating a monopoly in the ice business in said city, thus destroying competition in the sale of ice in the city of New York; and that as a result of such combination the price of ice in said city has been advanced 100 per cent. over the prices prevailing the previous season,—is sufficient to justify an order for the examination of the witnesses named, notwithstanding the corporation in question was organized under the laws of another state, and the illegal arrangement was effected prior to the enactment of said state.

6. SAME—CORPORATIONS—RIGHT TO PURCHASE STOCK IN ANOTHER CORPORATION.

Laws 1892, c. 688, § 40, permitting one corporation to purchase stock in another corporation, although the result be to destroy competition, does not justify such a transaction for the purpose of creating a monopoly in a particular business, and destroying competition in the production, supply, and sale of any article.

Actions by the people, on the relation of Charles W. Morse and the American Ice Company, against Myer Nussbaum, referee, and John C. Davies, attorney general, for writ of prohibition, and to vacate an order made by Mr. Justice CHASE. Writ of prohibition and motion denied.

Daly, Hoyt & Mason (David Willcox and William H. Rand, Jr., of counsel), for Charles W. Morse and the American Ice Company.

John C. Davies, Atty. Gen. (Edward P. Coyne, of counsel), for the People.

Benjamin F. Einstein, for Wm. R. Hearst.

CHESTER, J. A motion is made to vacate an order of Mr. Justice CHASE requiring Charles W. Morse and certain other persons therein mentioned to appear before Myer Nussbaum, Esq., a referee therein appointed, to be examined pursuant to the provisions of chapter 690, Laws 1899, and requiring them to produce certain books and papers mentioned in the order. There are also applications for two absolute writs of prohibition made on the return of alternative writs granted at special term, to restrain any further proceedings under the order of Mr. Justice CHASE. One of these writs is applied for by Charles W. Morse; the other, by the American Ice Company. All three matters have been argued together. The attorney general, however, makes a preliminary motion to set aside the alternative writs of prohibition on the ground, among others, that the court at special term had no power to grant them.

The office of the writ is to restrain subordinate courts and inferior judicial tribunals of every kind from exceeding their jurisdiction. Quimbo Appo v. People, 20 N. Y. 531; 16 Enc. Pl. & Prac. 1094.

The Code of Civil Procedure provides in section 2092 that:

"Except where special provision therefor is otherwise made in this article, an alternative writ of prohibition can be granted only at a special term of the court."

The following section (2093) provides that:

"An alternative writ of prohibition may be granted at a term of the appellate division of the supreme court only, directed generally to any judge holding, or to hold, a special term of the same court, or directed to one or more judges of the same court named therein, in any case where such a writ may be issued out of the supreme court, directed to any other court, or to a judge thereof."

It will be seen by these sections that, while power is given to the special term to grant writs of prohibition, the exception specified in section 2092 stands in the way of the special term granting the writ to run against another special term or another justice of the same court. This power is expressly given to the appellate division, and not to the special term. The provisions of the Code are therefore consistent with the rule of law that the writ can only run from a superior to an inferior court or judicial tribunal. The question is therefore presented as to whether the alternative writ granted by the special term, addressed to the referee and to the attorney general, runs against an inferior court or tribunal, or whether this court at special term can lawfully grant the absolute writ asked for, to be addressed to the same persons.

The act under which the order to examine these witnesses was procured (chapter 690, Laws 1899) provides in section 4 that:

"Whenever the attorney general has determined to commence an action or proceeding under this chapter, he may present to any justice of the supreme court ✻ ✻ ✻ an application in writing for an order directing the persons mentioned in the application to appear before a justice of the supreme court, or a referee designated in such order, and answer such questions as may be put to them, or to any of them, and produce such papers, documents and books concerning any alleged illegal contract, arrangement, agreement or combination, in violation of this chapter. ✻ ✻ ✻ The justice or referee may adjourn such examination from time to time and witnesses must attend accordingly."

Section 7 provides that:

"A referee appointed as provided in this act possesses all the powers and is subject to all the duties of a referee appointed under section 1018 of the Code of Civil Procedure, so far as practicable, and may punish for contempt a witness duly served as prescribed in this act, for non-attendance or refusal to be sworn or to testify, or to produce books, papers and documents ✻ ✻ ✻ in the same manner and to the same extent as a referee appointed to hear, try and determine an issue of fact or of law."

Section 1018 of the Code of Civil Procedure, above referred to, relates to the powers of a referee upon the trial of an issue before him. Under the powers conferred by this section, the referee takes the place of the court, and in the trial of a cause has substantially all the powers, with reference to the trial, of a court at special or trial term. Schuyler v. Smith, 51 N. Y. 309. Under the law, I think the referee here is charged with something more than a mere ministerial duty. In my opinion, he is charged with the judicial duty of ruling upon the admissibility of testimony, notwithstanding the provision in the statute requiring the witnesses to answer such questions as may be put to them, for the reason that the alleged materiality and necessity of the offered testimony lies at the foundation of the right to ask for the order to examine, and it must therefore be incumbent upon the officer charged with the duty of taking the examination, whether he be the justice or the referee, to determine in the first instance as to such materiality and necessity. While this is contrary to the usual rule concerning the powers of a referee appointed simply to take testimony, I think the legislative intent in conferring upon a referee appointed under this act all the powers, and making him subject to all the duties, of one appointed under section 1018, so far as practicable,

was to confer upon him the same powers in relation to the examination as would be possessed by the justice if he, instead, had conducted it; in other words, to have the referee stand in the place of the justice with reference to the examination. If this is not so, this grant of power is meaningless. The justice had his choice, under the law, to make the order requiring the witnesses to appear before him, or before a referee designated in the order, for examination. In either event, it is a matter at all times pending in the supreme court. It will hardly be claimed that a writ of prohibition could properly be granted by a justice sitting at special term, to run against another justice or another special term, for the reason that such writ would not be directed to an inferior court or tribunal, but to a branch of the same court, or to a judicial officer of equal rank and power as the one granting the writ. For the same reason, it would not run against a referee appointed to hear and determine an issue; for with reference to such trial the referee constitutes and stands in the place of the court appointing him. Neither will it run against this referee, if I am correct in my conclusions that, with reference to this examination, he is a judicial officer standing in the place and having the powers of the justice appointing him, the same as does a referee appointed to try an issue. If he is not such judicial officer, then he is simply a ministerial officer appointed by the justice to perform ministerial acts, and it is well settled that a writ of prohibition cannot be used to prevent the performance of such acts. Thomson v. Tracy, 60 N. Y. 31; 16 Enc. Pl. & Prac. 1102. For this reason, it will not lie against the attorney general. With reference to this examination, he is an administrative, and not a judicial, officer. But the writ here has been addressed to him simply as the representative of the party (i. e. the people) making the application for the order to examine, and, if it cannot run against the justice or the referee ordered to take the examination, it cannot run against him.

My conclusion that the special term had no power to grant the alternative writs, and that an absolute writ of prohibition in this case cannot be granted at special term, renders it unnecessary to examine the constitutional questions urged in support of the writs. The motions to set aside the two alternative writs should, therefore, be granted with costs.

The motion made by Charles W. Morse to vacate the order to examine him remains to be considered. The act (chapter 690, Laws 1899) under which the order was obtained was enacted in place of chapter 383, Laws 1897, and, with respect to matters of procedure, contains important changes and modifications of the earlier act. The evident purpose of these changes and modifications was to avoid some of the difficulties in the enforcement of the law made apparent by decisions in what was known as the "Coal-Trust Cases," where orders to examine witnesses under the law of 1897 were vacated. See In re Attorney General, 21 Misc. Rep. 101, 47 N. Y. Supp. 20, affirmed in 22 App. Div. 285, 47 N. Y. Supp. 883, appeal dismissed in 155 N. Y. 441, 50 N. E. 57. As appears by the reported case, when that matter was before me at special term my decision vacating the orders was placed upon three

grounds: (1) That the act under which the orders were granted attempted to impose upon justices of the supreme court nonjudicial functions; (2) that the procedure sought to be authorized was an infringement upon the constitutional rights and privileges of a witness charged with a crime, because the act did not furnish absolute immunity to the witness from prosecution; and (3) because of the insufficiency of the petition under which the order was granted. Id., 21 Misc. Rep. 101, 47 N. Y. Supp. 20. All three of these grounds are urged again, with great ability, against the validity of the order in question here.

With respect to the first ground, it may be said that, while the appellate division affirmed the order made by me at the special term, a majority of the justices disagreed with my conclusion as to that ground, and held that the duties imposed upon the justices by the act were judicial in their nature, and were duties which the legislature had the right to impose upon them. Id., 22 App. Div. 285, 47 N. Y. Supp. 883. The conclusion of the appellate division in this respect is an authority I am bound to follow, unless the changes made by the law of 1899 operate to remove this case from the binding authority of that decision. It is insisted that now there is no opportunity for the exercise of discretion by the justice, because the present act makes it the duty of the justice to whom the application is made to grant the application, and provides in one place that "the order shall be granted" by him (section 4), while the former act provided that, if it appeared to the satisfaction of the justice to whom the application for the order is made that such an order is necessary, then such order should be granted (section 5). The claim is that under the present law the justice has no discretion in the matter, and must grant the order simply because it is asked for by the attorney general. It is true that the language of the act looks very much as if the legislature intended by it to provide for a sort of legislative mandamus against the justice to whom application for the order might be made. But, notwithstanding the law says that he shall grant the order, I think he is still charged with the duty of exercising a judicial discretion, in determining whether he should grant it or not in the specific case. The language means no more than if the act provided that the justice "may," instead of "shall," grant the order. The legislature is as powerless to coerce judicial action as the courts are to issue a mandamus against the governor or the legislature, each being independent of either of the others within their respective spheres of duty. People v. Morton, 156 N. Y. 136, 50 N. E. 791, 41 L. R. A. 231. Similar language is employed in the Code of Civil Procedure with respect to the examination of a party to an action before trial, where it is provided in section 873 that the judge to whom the affidavit mentioned in section 872 is presented "must grant an order for the examination, if an action is pending." In a case arising under this clause the court of appeals has held that it did not deprive the judge of his judicial discretion in the matter. Jenkins v. Putnam, 106 N. Y. 272, 12 N. E. 613. I think, therefore, that the mandatory character of the language employed in the law as to the duty of the justice to grant the order in question does not pre-

vent him from exercising his judicial discretion to grant or refuse it; and the case is, therefore, notwithstanding the changes in the law, brought within the binding authority of the decision of the appellate division in the case referred to. In re Attorney General, 22 App. Div. 285, 47 N. Y. Supp. 883.

It is urged, in the second place, that the act in question is unconstitutional because under it the witness may be compelled to give evidence which can be used against him in a criminal case. It seems to me that under the present law, which in this respect is essentially different from the law of 1897, there is no force in this claim. The law now provides in section 6 that:

"No person shall be excused from answering any questions that may be put to him, or from producing any books, papers or documents, on the ground that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him, but no person shall be prosecuted in any criminal action or proceedings, or subjected to any penalty or forfeiture, for or on account of any transaction, matter or thing concerning which he may testify, or produce evidence, documentary or otherwise, before said justice or referee appointed in the order for his examination, or in obedience to the subpœna of the court, or referee acting under such order, or either of them, or in any such case or proceeding."

The protection afforded by this section to the witness against the consequences of his testimony is ample. Its terms are broad and comprehensive. Full and complete immunity is given to protect him against being prosecuted in any criminal action or proceeding, and against being subjected to any penalty or forfeiture, for or on account of any evidence he may give. The legislature had the right to give this immunity, as a condition of exacting testimony that otherwise might tend to convict the witness of a crime. When testimony is given under such circumstances, the courts will give full protection to the witness against its use in violation of the constitutional inhibition that no person shall be compelled in any criminal case to be a witness against himself. People v. Sharp, 107 N. Y. 427; 14 N. E. 319; Same v. Kelly, 24 N. Y. 74.

In the next place, the sufficiency of the petition used on the application for the order to examine is challenged. The substantive provisions of the act are contained in the first two sections, which are as follows:

"Section 1. Every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this state in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this state of the manufacture, production or sale of any such article or commodity, the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void.

"Sec. 2. Every person or corporation, or any officer or agent thereof, who shall make or attempt to make or enter into any such contract, agreement, arrangement or combination, or who within this state shall do any act pursuant thereto, or in, toward or for the consummation thereof, wherever the same may have been made, is guilty of a misdemeanor, and on conviction thereof, shall, if a natural person be punished by a fine of not exceeding

five thousand dollars, or by imprisonment for not longer than one year, or by both such fine and imprisonment; and if a corporation, by a fine of not exceeding five thousand dollars."

The balance of the act relates generally to procedure. The third section authorizes the attorney general "to bring an action in the name of the people against any person or corporation, foreign or domestic, to restrain the doing in this state of any act herein declared to be illegal, or any act toward or for the making or consummation of any contract, agreement, arrangement, or combination herein prohibited, wherever the same may have been made." Section 4 provides that, "whenever the attorney general has determined to commence an action under this chapter, he may present to any justice of the supreme court before beginning such action an application in writing for an order directing the persons mentioned in the application to appear before the justice or a referee designated in the order for examination. The application may simply show upon the information and belief of the attorney general that the testimony of such persons is material and necessary." This section also provides that the provisions of the Code of Civil Procedure relating to the application for an order for the examination of witnesses before the commencement of an action shall not apply. In this respect the law is different from that of 1897, under which these provisions of the Code were made applicable so far as practicable. Under the statute as it now stands, the only things the attorney general is expressly required to state in his application are that he has determined and intends to bring an action under the provisions of the law, and that he is informed and believes that the testimony of the persons mentioned in the application is material and necessary. These facts the attorney general has specifically alleged, so that in both of these respects the law has been complied with. But it is insisted that the facts alleged relating to the contract, agreement, or combination claimed to be unlawful are not sufficient to bring the case within the provisions of the substantive provisions of the statute contained in sections 1 and 3. It is stated by the attorney general in his application, in addition to the allegations above mentioned, in substance, that the two available sources for the supply of ice to the inhabitants of the city of New York are the Hudson River valley, and the Kennebeck and Penobscot rivers, in Maine; that prior to March 11, 1899, more than 80 per cent. of the available ice and of the ice plants along the Hudson river and in the state of Maine were owned or controlled by two corporations organized under the laws of the state of Maine, to wit, the Knickerbocker Ice Company and the Consolidated Ice Company; that the Consolidated Ice Company prior to March 11, 1899, controlled about 90 per cent. of the wholesale and retail ice business in the city of New York, and the Knickerbocker Ice Company about 80 per cent. of the wholesale and retail ice trade in the cities of Philadelphia, Baltimore, and Washington; that those two corporations, acting together, thus had a virtual monopoly of the ice supply available to the inhabitants of the city of New York, and, acting together, had it in their power to fix the price of ice arbitrarily; that prior to March 11, 1899, the said Knickerbocker Ice Company and Con-

solidated Ice Company agreed to combine their interests, and thereby control, by one company and one management, the entire ice-producing territory, for the purpose of creating a monopoly in the ice business in various cities,—particularly the city of New York,—and pursuant to such understanding and agreement the said American Ice Company was organized under the laws of the state of New Jersey on March 11, 1899, with an authorized capital of $60,000,000, divided equally into common and preferred shares; that pursuant to such understanding or agreement, and in consummation thereof, the American Ice Company immediately thereafter acquired title to more than 90 per cent. of the total capital stock of the said Knickerbocker Ice Company and the Consolidated Ice Company, by an arrangement whereby shares of the American Ice Company, although without any value, and representing no property, were exchanged, share for share, for stock of said two companies, said arrangement or agreement thus vesting in one body, to wit, the board of directors of the American Ice Company, the control of the said two constituent corporations, and thereby effecting a monopoly in the supply of ice to the inhabitants of the city of New York, and destroying competition in the production, supply, and sale of ice in the city of New York, and that, as a direct result of such combination the American Ice Company raised the price of ice in the city of New York 100 per cent. over the prices prevailing during the two preceding years, for the sole reason of providing means for paying dividends upon the enormous capitalization of the American Ice Company, issued without value, as aforesaid. I am of the opinion that these allegations are sufficient to bring the case within the provisions of the statute, and were adequate to justify the order for the examination of the witnesses. It is not necessary to assert that the alleged unlawful combination or arrangement took place in this state, because the statute prohibits any act within the state, pursuant thereto or for the consummation thereof, and authorizes the attorney general to bring an action to restrain the alleged illegal acts here, wherever the alleged unlawful combination or arrangement was made. Nor is it important that the facts alleged as constituting such arrangement or combination are alleged to have taken place on March 11, 1899, or prior thereto, while the act of 1899 did not take effect until May 25th of that year, for the reason that the substantive provisions of the act of 1899 were but a re-enactment of exactly the same provisions contained in the act of 1897. There can arise, therefore, no question concerning the law being retroactive or ex post facto in character; for it has not been changed at all in this respect during any portion of the time covered by the transactions referred to in the application. It is also asserted that under the laws of this state, as well as those of Maine and of New Jersey, it was lawful for the American Ice Company to exchange its capital stock for the capital stock of the Consolidated and Knickerbocker Ice Companies. It is true that, under section 40 of the stock corporation law (Laws 1892, c. 688), this is so; and it has been held that that section authorizes one corporation to purchase stock in another, although the result might be to destroy competition. Rafferty v. Gas Co., 37 App. Div. 618, 56 N. Y. Supp. 288. But it

may happen that an act otherwise legal, if done with an illegal pur-
pose or intent, becomes, by virtue of such purpose or intent, illegal, and
therefore to be condemned.   While the law permits one corporation
to buy and hold stock of another corporation, the attorney general
sufficiently alleges that this was done in this case for an unlawful
purpose.   He alleges, in effect, that the purpose of the alleged agree-
ment or arrangement between these companies to so combine their in-
terests was to create a monopoly in the ice business, and destroy
competition in the production, supply, and sale of ice in the city of
New York, in violation of law, and that in pursuance of such agree-
ment and arrangement the American Ice Company acquired the stock
of the other two companies.   I think, therefore, that he brings the
case within the provisions of the law which condemns every contract,
agreement, arrangement, or combination having for its purpose the
creation or maintenance within this state of a monopoly of the pro-
duction or sale of an article of common use, or the restraining or
preventing competition in the price or supply of any such article, and
that his written application is sufficient to justify the order for ex-
amination which has been granted.

It is also urged that the provision of the statute conferring upon the
referee power to punish witnesses for contempt is unconstitutional,
but I think that question is not here for determination.   It will be
time enough to consider that when a case arises making it necessary.
The court of appeals has held that a matter of this kind is not a special
proceeding, and that any order made cannot affect a substantial right
of the witness.   In re Attorney General, 155 N. Y. 441, 50 N. E. 57.
For this reason, and for the further reason that full immunity is now
given to the witness, I do not deem it essential for me to consider the
other constitutional questions urged on this motion.

The motion to vacate the order is denied, with costs.   Orders may
be prepared in conformity herewith, and, if not agreed to by counsel,
may be settled before me on two days' notice.