WILLIAM D. FAGAN, JR. AURELLIA FAGAN, His Wife, and HORACE B. CHASE II, *Appellants, v.* MYRA F. ROBBINS, by E. STANLEY ROBBINS, Her Husband and Next Friend, *Appellee.*

Division B.

Opinion filed June 26, 1928.

92

*Morey Dunn and E. Harris Drew,* Attorneys for Appellants;

*R. M. Griffin,* Attorneys for Appellee.

Buford, J.—The facts in this case have been stated as follows: "The appellee as complainant in the court below and referred to herein as the complainant, on March 13, 1926, filed her bill of complaint in the Circuit Court of Palm Beach County, Florida, on the chancery side of said court, against the appellants, William D. Fagan, Jr., Aurelia Fagan, his wife, and Horace B. Chase, II, and another, E. Wilson, herein referred to as the defendants, to foreclose a mortgage bearing date June 8, 1925, covering certain property in Palm Beach, Palm Beach County, and State of Florida, given by the said William D. Fagan, Jr., and Aurelia Fagan, his wife, to the said Horace B. Chase,

II, for the purpose of securing the payment of three certain promissory notes in the sum of $8000.00 each, dated June 8, 1925, and payable on or before one, two and three years, respectively, after date, with interest from date at the rate of eight per cent, per annum, said interest payable semi-annually.

It was alleged and shown by the said bill of complaint, among other things, that the said mortgage and notes had, on the 23rd day of June, 1925, by an assignment in writing, been sold, assigned, transferred and set over by the said Horace B. Chase, II, to the said Myra F. Robbins, the said assignment in writing having been placed of record in said county and state on October 13, 1925, and that on December 8, 1925, the semi-annual interest on the said three promissory notes, amounting to the sum of $960.00 became due and payable to said complainant, and was not paid, and that by reason of such default and the lapse of more than thirty days since the said interest became due and payable, the said complainant had exercised the option given her in the said mortgage to declare the aggregate sum mentioned in the said promissory notes and the said mortgage as immediately due.

In the course of the proceedings a general demurrer was filed by William D. Fagan, Jr. and Aurelia Fagan, his wife, also a general demurrer was filed by Horace B. Chase, II, and E. Wilson. The demurrers were overruled by the court below at a hearing thereon on July 28, 1926.

On August 16, 1926, a joint answer to the bill of complaint was filed by the defendants. The answer consisted of paragraphs one, two and three. In paragraph one, the defendants, in substance, alleged that the note was not made payable at any place more definite than West Palm Beach, Florida, and that all of the money allowed by the bill of complaint to be due was, on the day same became due and

payable at the home and at the office of Horace B. Chase, II and at the home and at the office of William D. Fagan, Jr.; that said money was kept at said safe places all during the day same became due and payable and for many days thereafter; that the said note was not presented for payment at any of said places or to either of said defendants on the day same became due and payable or at any time thereafter; that the defendants have been ready, able and willing at all times since said amount became due to pay same, are now ready, able and willing to make payments due and tender the amount into court with their answer to the bill of complaint. The record disclosed no *profert* in *curia*.

Paragraph two stated that all of the allegations in the bill of complaint, not herein admitted, are specifically denied by these defendants.

Paragraph three prayed that the complainant be required to accept the amount tendered in court; that the complainant not be allowed solicitor's fees and costs; and that said cause be dismissed.

On November 17, 1926, the solicitors representing the defendants stipulated with the solicitor representing the complainant to waive the statute and rules of court relating to the filing of exceptions to answers in chancery and allow the complainant fifteen days within which to file exceptions to the answer of the defendants and motion to strike, and in said stipulation agreed that the time for the taking of testimony be enlarged for a period not exceeding sixty days after disposition of exceptions to answer and motion to strike answer.

On November 27, 1926, the complainant filed exceptions to the answer of the defendant by which said exceptions the complainant sought to have expunged from the answer all of paragraphs one and three as scandalous and im-

pertinent.  At the time the said exceptions were filed, the complainant also filed a motion to strike portions of the said answer.  The first part of said motion was addressed to paragraphs one and three of the answer on the grounds that said paragraphs are scandalous and impertinent, are not responsive to the bill, do not allege facts constituting a defense, that said paragraphs purport to set forth that there was no presentment or demand for payment, whereas the notes show on their face that demand and notice of non-payment was expressly waived, etc., are not drawn conformable to Sec. 3118 to 3122 of Rev. Gen. Stats., and fail to allege any matters which would be the basis of a set-off or counter-claim.  The second part of said motion was addressed to paragraph two of the answer on the ground that it is merely a general denial of certain allegations of the bill not otherwise admitted by the answer and is not framed according to Sec. 3118 of Gen. Rev. Stats.

On February 2, 1927, after timely notice, the court allowed the exceptions to the answer and granted the motion to strike portions of the answer and made and entered a decree pro confesso against the defendants in said cause. The record discloses no timely motion or other effort to open the decree pro confesso.''

A master was appointed, testimony was taken and submitted to the court; final decree was entered; sale of the property was had and after the sale it was found that the proceeds of the sale were not sufficient to pay the amount of the decree.  Application was made for a deficiency decree, which was granted against all the defendants.

From the several decrees appeal was taken.

We find no reversible error as disclosed by the record, except that it appears from the record itself that the chancellor misconstrued the force and effect of Chap. 7859, Acts of 1919, and was coerced by the provisions of that

Act as he saw and construed them, to enter a decree which he would not in the exercise of his sound judicial discretion, have entered. The learned chancellor has written in the decree the following language:

"And while the court is of the opinion that the entry of a deficiency decree for the full amount remaining unpaid is unconscionable and inequitable, yet by virtue of the 1919 Act of the Legislature pertaining to deficiency decrees, the court believes that one should be entered."

It is a matter of common knowledge that there has long been a diversity of opinion between lawyers and also between judges in this State as to whether or not the provisions of Sec. 2 of Chap. 7839, *supra,* were mandatory or were directory. There are two good and sufficient reasons why we think that the word "shall" as used in this section of the Act merely confers authority and is not mandatory. One reason for this conclusion is that the apparent and logical purpose of the Act was to provide a statute authorizing the court to enter deficiency decrees against all persons liable for a mortgage debt or liable for a lien debt, whether such liability should be primary or secondary and whether such liability was created by endorsement of the note or as joint maker of the note or grantor or otherwise. Prior to the enactment of this statute deficiency decrees were entered in foreclosure suits under authority of Equity Rule No. 89 and this rule did not apply to other liens. See Johnson v. McKinnon, 54 Fla. 221; 45 So. R. 23; 13 L. R. A. (N. S.) 874. Neither did that rule authorize the entry of a deficiency decree against an endorser of a note. Snell v. Richardson, 67 Fla. 386, 65 So. R. 592. So we conclude that in view of the language used in the case of Johnson v. McKinnon, *supra,* it was the purpose of the Legislature to extend the provisions of Rule 89, *supra,* to cover other liens beside mortgage liens and that it was the pur-

pose.of the Legislature in view of the language used in Realty Mortgage Co. v. Moore, 80 Fla .2, 85 So. R. 115, and in Snell v. Richardson, *supra*, to authorize the court to enter deficiency decrees against obligors other than the makers of the mortgage.

In Realty Mortgage Co. v. Moore, *supra*, this court say:

"Equity Rule 89 of the Rules of Circuit Court in Equity, granting to such courts in suits in equity for the foreclosure of mortgages, the power to render a decree against the mortgagor for any balance that may be found to be due the plaintiff, over and above the proceeds of the sale or sales of the mortgaged property, does not deprive the court of its sound judicial discretion to determine the right to such deficiency decree."

And further, in the same opinion, the court say:

"A mortgagee may so deal with the mortgagor's grantee of the mortgaged premises as to deny to the mortgagee the right to a deficiency decree against the mortgagor." * * *

"The power vested in circuit courts, in Equity, by Rule 89 of the Circuit Courts in Equity, for the foreclosure of mortgages declaring that a decree may be rendered for any balance that may be found due to the plaintiff over and above the proceeds of sale or sales, is a discretionary one, and may be granted or denied according to the facts and circumstances in each case."

So it will be observed that this court has for all time settled the question that the granting or denying of a de-

ficiency decree is a matter to be determined only by the exercise of judicial discretion and that such decree may be granted or denied according to the facts and circumstances in each case.

It will be observed that Chap. 7839, *supra,* provides that "all persons having any interest in the said mortgage or lien or the property mortgaged or upon which the lien exists, or having assumed the obligation to pay the mortgage debt, or lien debt, whether such obligation shall be as endorser of the note or notes, guarantor of the debt, or otherwise may be made parties to such suit or proceeding to enforce such lien or foreclose the same."

The Act further authorizes deficiency decrees to be entered in such cases when the proceeds of the sale of the property subject to the mortgage or lien shall not be sufficient to pay the debt and costs for any balance that may remain after the application of the proceeds of the sale of such property to said debts and costs, against the party or parties liable for the mortgage debt or lien debt, whether such liability is primary or secondary and whether such liability is created by endorsement of the note or as a joint maker of the note, or guarantor, or otherwise, of the obligation sought to be enforced and these provisions are made to apply to the representative of any such obligor who is liable either primarily or secondarily when such person so liable is dead at the time of bringing the suit.

Now, if we construe the Act to authorize and permit this procedure by the court in proper cases within the exercise of proper judicial discretion, the Act can be held valid and effective, but if we construe these provisions of the Act to be mandatory as to the several classes of obligors and persons liable as named in the Act, then we must immediately recognize the fact that such construction must in a great many cases bring the provisions of the Act in direct conflict

with Section 3 of the Bill of Rights of the Constitution of the State of Florida, in that such construction would require the courts of chancery to enter deficiency decrees against persons liable as endorsers, guarantors or otherwise, although under the issues presented by the pleadings it is made clearly to appear that such persons are entitled to have the issues tried by a jury.

Having reached the conclusion as above stated, it follows that if the Act here under consideration is to be held valid it must be construed as a directory or permissive authority and not as mandatory.

To hold the Act as being mandatory would require us to determine what the legislature has attempted to coerce the judicial action of the courts and that in so doing it has invaded the province of the courts and passed an invalid Act. When construed as a directory and permissive statute, it may be held to be valid and to serve a good purpose, and we so hold. In construing the word "shall" in a legislative Act in which it was contended that the use of such word made it mandatory upon judges to grant certain orders under certain conditions, the Supreme Court of New York in People ex rel., Morse v. Nussbaum, 66 N. Y. Supplement 129, say:

"The claim is that under the present law the justice has no discretion in the matter, and must grant the order simply because it is asked for by the attorney general. It is true that the language of the Act looks very much as if the legislature intended by it to provide for a sort of legislative mandamus against the justice to whom application for the order might be made. But, notwithstanding the law says that he shall grant the order, I think he is still charged with the duty of exercising a judicial discretion, in determining whether he should grant it or not in the specific

case. The language means no more than if the Act provided that the justice "may" instead of "shall" grant the order. The Legislature is as powerless to coerce judicial action as the courts are to issue a mandamus against the governor or the legislature, each being independent of either of the others within their respective spheres of duty. People v. Morton, 156 N. Y. S. 136, 50 N. E. R. 791, 41 L. R. A. 231. Similar language is employed in the Code of Civil Procedure with respect to the examination of a party to an action before trial, where it is provided in Sec. 873 that the judge to whom the affidavit mentioned in Sec. 872 is presented, "must grant an order for the examination, if an action is pending." In a case arising under this clause the court of appeals has held that it did not deprive the judge of his judicial discretion in the matter. Jenkins v. Putnam, 106 N. Y. S. 272, 12 N. E. R. 613. I think, therefore, that the mandatory character of the language employed in the law as to the duty of the justice to grant the order in question does not prevent him from exercising his judicial discretion to grant or refuse it."

The reasoning and conclusion of this decision is supported by the Supreme Court of Washington in Clancey v. McElrey, 30 Washington 567; in Boyer v. Onion, 108 Ill. Appel. Ct. R. 612; Becker v. Lebanon, 188 Pa. St. 484, in which latter case the court say:

"The word "shall" when used by the legislature to prescribe the action of a court is usually a grant of authority, and means "may" and even if it be intended to be mandatory it must be subject to the necessary limitation that a proper case has been made out for the exercise of the power."

For the reasons stated, the decree confirming the sale and adjudicating a deficiency against the defendants will be reversed and the cause remanded for such decree as the chancellor in the exercise of his judicial discretion may deem proper to enter in accordance with law and the rules of practice.

Reversed and remanded.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., concurs in the opinion and judgment.

STRUM AND BROWN, J. J., dissent.

STRUM, J. (dissenting) :—

In my opinion, Sec. 2 of Chap. 7839, Acts of 1919, is not merely directory, but mandatory, and that when so construed it is a valid enactment as against the objection that it is a legislative attempt to control judicial discretion, in so far as the mandatory entry of a deficiency decree against the maker of a mortgage note is concerned. Whether it is in conflict with Sec. 3, Declaration of Rights, or is amendable to any other constitutional objection, when applied either to the maker or to those secondarily liable on the note, is not presented and therefore not considered.

In other respects I concur in the foregoing opinion by Mr. Justice BUFORD:

In Webber v. Blanc, 39 Fla. 224, 22 So. R. 655, this court held that in the absence of a Statute, or Rule of Court, made "in compliance with law," no decree in chancery for a deficiency after a sale of the mortgaged property could be entered in a court of equity, unless the debt, without the mortgage, is such that a court of chancery would have

jurisdiction of it and could render a decree for it. See also 42 C. J. 290.

In 1873, Equity Rule 89 was adopted vesting in the circuit courts discretionary authority to enter deficiency decrees in mortgage foreclosures. The power to adopt that rule was derived from existing statutory authority so to do. Without such statutory authority the rule would not have been authorized since under the original equity practice, unaffected by statute, a mortgage foreclosure was a proceeding *in rem,* or *quasi in rem,* and the court had no power to render a personal judgment against the mortgagor for a deficiency, the mortgagor in cases where a deficiency occurred being left to a seperate action at law. Frank v. Davis, 31 N. E. R. 1100; 17 L. R. A. 306. See also Etter v. State Bank, 76 Fla. 203, 79 So. R. 724, 725. Prior to the Act of 1919 there was no specific statute in this State expressly vesting in a court of chancery to enter deficiency decrees in mortgage foreclosures. Etter v. State Bank, *supra.* But when the power to adopt Chancery Rule No. 89 was questioned in Snell v. Richardson, 67 Fla. 386, 65 So. R. 592, this court rested the authority for the adoption of the rule squarely upon statutory authority existing at the time of the adoption of the rule, thus acknowledging at least tacitly that the power to adopt the rule and to proceed under it did not inhere in a court of equity but rested upon statutory authorization. After discussing Chap. 1938, Acts of 1873, and other existing statutes, this court, in the case last named, said: ''Under the power thus *conferred,* this court * * * adopted Rule 89. * * * It may well be true that even under the statute as it now stands (as of the year 1914), Sec. 1740 of the General Statutes, this court would have the power to adopt Equity Rule 89, but whether so or not there can be no question that it had such power in 1873 under the statute as it then stood when

such rule was adopted." Persuant to .authority of Equity Rule 89, it became the practice to thereafter render deficiency decrees in proper cases, although under that rule the right of the mortgagee to such a decree was not absolute or unqualified, but such a decree was rendered only when, in the sound judicial discretion of the chancellor, it was justified by the facts or circumstances of the case.

If the power or discretion to enter such decrees is an inherent power of a court of equity, there is no necessity for the court to again "confer" the power upon itself by rule. Courts need no statutory authority to exercise inherent judicial discretion or power. Besides, this court has already said in effect that the power to adopt, Equity Rule 89 is derived from existing statutory authority. Snell v. Richardson, *supra.* So the ultimate source of the power is found, not in an inherent attribute of the court, but in the statutes authorizing the adoption of the rule.

Although Realty Mortgage Co. v. Moore, 80 Fla. 2, 85 So. R. 155, confirming an order refusing to enter a deficiency decree, was decided in 1920, the bill of complaint was filed prior to the enactment of Chap. 7839, Acts of 1919. The final decretal order in the case last named, in which the chancellor declined to enter a deficiency decree, was rendered May 8, 1919. Chap. 7839, *supra,* became a law and effective on June 7, 1919. While this statute extended the classes of cases in which deficiency decrees might be entered to the foreclosure of other liens as well as mortgage liens and to obligors other than the primary debtor, in my opinion it was plainly the legislative intent to go further, and not only to authorize courts of equity to enter such decrees in their discretion, but to require the entry of such decrees in cases where it has been judicially determined, according to the rule prescribed in the statute, that a deficiency existed. Otherwise, why did the Legislature use the word

"shall" in the statute, the ordinary use of which is well known to import a mandatory command, instead of the word "may" as used in Equity Rule 89 since 1873 and which had long since been construed as permissive, of which construction the Legislature presumably had knowlege when it passed Chap. 7839, *supra*.

Rules, such as Equity Rule 89, adopted pursuant to statutory authority have the same force and effect as a statute, and similar rules of construction apply. It is a rule of statutory construction that where an amendment is enacted, it must be assumed that a change in the existing law to the extent indicated by the nature of the amendment was intended unless a contrary intent appears from all of the enactments on the subject, and courts should give appropriate effect to the amendment. Atlantic Coast Line R. R. v. Amos, 115 So. R. 315.

Although, as was held in Snell v. Richardson and Etter v. State Bank, *supra*, under Equity Rule 89 the entry of a deficiency decree rested in the sound judicial discretion of the court, that discretion is exercised pursuant to the statute which conferred it, and not otherwise. Since the authority to enter deficiency decrees arises initially from a statutory enactment, and is not the exercise of a judicial discretion inherent in the court, the same authority, namely, the legislature, which vested the power in the courts, can further regulate the authority by changing it from a permissive authority to a mandatory authority, or by altogether abrogating the authority.

For the reasons stated, it appears to me that Sec. 2 of Chap. 7839, *supra*, is not an attempt to control the exercise of inherent judicial discretion, not only because no discretion in the respect under consideration existed independently of statutory authority, but because the statute in question merely prescribes a rule of remedial law, and

is binding upon the courts as such. It is a rule of remedial law of the same general character, and sustainable upon the same principles, as that requiring the entry of judgment against the sureties upon a forthcoming bond in replevin, attachment, garnishment, or in distress proceedings, when the plaintiff prevails, thereby eliminating the necessity for proceeding against such sureties by a separate action, Secs. 3493, 3565, Rev. Gen. State. 1920; or that providing that common law courts shall charge the jury at the conclusion of the evidence and before the argument of counsel, Chap. 9364, Acts of 1923, all of which statutes have been held valid as mandatory enactments. In those instances first mentioned the court exercises a judicial discretion, in coordination with the function of the jury, in the determination of whether or not plaintiff is entitled to judgment in the first place, a discretion of the same quality (but exercised of course under essentially different rules of procedure) as that exercised by the chancellor in determining the equities and liabilities between the parties in a mortgage foreclosure, and whether or not a deficiency exists. But when the existence of a deficiency is judicially determined according to the rule prescribed by the statute, then the statute requires that a decree for the deficiency be entered in that action, just as in the other instances pointed out the court is required to enter judgment against the sureties in that action, thereby obviating the necessity, which would otherwise exist under general rules, of bringing another action against the sureties. Having determined that the plaintiff is entitled to judgment in those instances, or in mortgage foreclosure that a deficiency exists, according to the rule of liability prescribed by the statute, no further discretion remains with the court as to whether a judgment shall be entered for it in that action. The substance and effect of the statute is that when it has been

judicially determined according to the rule of liability therein prescribed that a deficiency exists, judgment shall be entered for it in the foreclosure, purely a rule of procedure.

The fact that the statutes just above referred to relate to common law courts does not distinguish them in principle from the statute under consideration. That judicial discretion which inheres in common law courts can no more be regulated by legislative action than that inhering in courts of equity.

In principle the statute under consideration is analogous to those which define the scope and effect of answers in chancery and abolish cross bills, or those defining what shall be put in issue by a plea of not guilty, since all prescribe procedural rules of remedial law, that is, the course of procedure by which substantive rights are enforced or the forms by which justice shall be administered. The statute does not constitute an attempt to regulate courts in those matters pertaining to or necessary in the internal operation of courts in the discharge of their duties and the dispatch of matters before them. As to the latter the courts themselves are paramount.

In State ex rel. Ross v. Call, 39 Fla. 504, 22 S. R. 748, decided in 1897, and at the same term as Webber v. Blanc, *supra*, it was said that although in a general sense every court of record has inherent power to adopt rules of general practice, yet it is equally true that in all matters not purely of a judicial nature, or forbidden by constitutional limitation, the Legislature has power to prescribe general rules of procedure and pleading, binding upon parties and the courts. Further, that the Legislature has power to divest the common law rights of circuit courts to prescribe such rules of practice as are simply convenient or beneficial, but not necessary, to the courts in the exercise of their

rightful jurisdiction. And we think the Legislature has done so in this State. Speaking further in that case, the court said: "It was contemplated by the constitution that the Legislature would regulate the pratice of courts of justice, and it was, therefore, provided by Sec. 20 of Art. III, Constitution of 1885, among other things, that 'the Legislature shall not pass special or local laws in any of the following enumerated cases, that is to say, * * * regulating the practice of courts of justice, except municipal courts;' and by Sec. 21 it was provided that in all such cases 'all laws shall be general and of uniform operation throughout the state'." In Blanchard v. Raines, 20 Fla. 467, it was also said: "The form of administering justice and powers of the courts are subjects of legislative control." That statement is of course to be qualified by the requ rements of constitutional limitations and the legitimate inherent powers of the courts. To the same effect see Keen v. State, 89 Fla. 113, 103 So. R. 399. This rule applies to courts of equity. The Legislature may prescribe the procedure by which the jurisdiction of courts of equity is to be exercised unless the regulations adopted substantially impair a constitutional or inherent power of the court, or practically defeat its exercise. Cary v. Mine, etc., Sup. Ct. R., 129 Pac. R. 230; 12 C. J. 826. See also Brown v. Kalamazoo Circuit Judge, 42 N. W. R. 827, 5 L. R. A. 226. As already stated, courts of equity possess no inherent power in respect to deficiency decrees in mortgage foreclosures.

It is conceded that the Legislature may mandatorily prescribe or regulate generally the procedure for the foreclosure of mortgages. What is there to distinguish from the general rule that part of the procedure relating to the entry of judgment in that action for a deficiency judicially determined to exist. The purpose of the statute is to relieve litigants of the expense and vexation of two suits, one in

equity and the other at law, which would have been the necessary course under the original chancery practice independent of statute, and enable them to obtain complete relief in one suit, the rendition of a personal judgment for a deficiency having been originally an exception to the general rule that having obtained jurisdiction equity will retain it and render full relief, both legal and equitable, between the parties in respect to the transaction or subject matter involved. Frank v. Davis, *supra;* Lynch v. Metropolitan etc., R. Co., 129 N. Y. S. 274; McGean v. Metropolitan etc., R. Co., 133 N. Y. S. 9.

· Of course, the courts themselves are the paramount authority in the making of rules regulating the internal operation of the courts, the manner in which courts shall proceed in the dispatch of their own business, and in short all matters necessary to the courts in the exercise of their lawful jurisdiction. This class of rules embraces those relating to oral arguments, the number and style of transcripts, briefs, and the like, that is, all things necessary to the court in the performance of its judicial duties, as distinguished from rules relating to substantive rights or remedial law. See Bryan v. State, 114 So. R. 773; Spafford v. Brevard County (on re-hearing), 110 So. R. 451.·

To me there is a clear distinction between the situation here presented and that which arose in People v. Nussbaum, 66 N. Y. S. R. 129, in which the statute undertook to mandatorily require the issuance of a writ of mandamus on application of the attorney general, without reference to the showing made. That statute attempts to control the court's discretion in deciding a question of substantive law, namely, whether or not the relator had made a case entitling him to the writ. Clearly that can not be done. But here the question is one of remedial law, and does not regulate or restrain the manner in which the court shall exercise its

.judicial discretion upon the substantive question involved. The statute does not attempt to fetter or impair the judicial discretion in determining whether a deficiency exists, or whether his substantive rights entitle complainant to a judgment therefor, but merely provides that when the proceeds of the sale shall be insufficient to pay the debt and costs,—a matter to be judicially determined without restraint,—then in the event it shall be so determined that such a deficiency does exist, the court "shall" enter judgment for it in that proceeding and not relegate the complainant to an additional action at law to recover it.

Since the reversal here rests upon the theory that Chap. 7839 is permissive or directory only, and since I do not agree to that construction of the statute, I dissent.

BROWN, J., concurs.