**UNITED STATES of America,**
Plaintiff,

v.

**James Griggs RAINES, Dixon Oxford, Roscoe Radford, Registrars of Terrell County, Georgia, F. Lawson Cook, Sr., and Mrs. F. Lawson Cook, Sr., Deputy Registrars, Defendants.**

Civ. A. No. 442.

United States District Court
M. D. Georgia,
Americus Division.

Jan. 24, 1961.

Frank O. Evans, U. S. Atty., Macon, Ga., St. John Barrett, Ben Brooks, Dept. of Justice, Washington, D. C., for plaintiff.

Charles J. Bloch, Ellsworth Hall, Jr., Macon, Ga., Peter Zack Geer, Atlanta, Ga., Robert L. Russell, Jr., Winder, Ga., for defendants.

BOOTLE, District Judge.

Under the Civil Rights Act of 1957 (42 U.S.C.A. § 1971(c)) the United States, by the Attorney General, brought this action to obtain preventive relief against alleged acts and practices of the defendants as voting registrars and deputy registrars of Terrell County, Georgia which would deprive other persons of rights and privileges secured by subsection (a) of 42 U.S.C.A. § 1971, namely, the right and privilege of citizens of the United States who are otherwise qualified by law to vote at any election by the people in the State of Georgia to be entitled and allowed to vote at all such elections without distinction of race or color. The trial of the case resulted in

a finding of fact that the defendants had engaged in specified acts and practices which deprived Negro citizens of Terrell County of their right and privilege to be entitled and allowed to vote at all elections in Terrell County without distinction of race or color and a decree enjoining them from further engaging in such acts and practices and requiring specifically that four named Negroes be enrolled upon the current list of qualified voters of said county within ten days from the date of said decree, and that certain of the defendants file with the clerk of this court within a specified time their detailed report in writing of their full compliance with the provisions of the decree requiring said enrollment. The said findings of fact, appropriate conclusions of law, and said decree were signed and filed on September 13, 1960.

On September 22, 1960 the defendants so required to report filed their written report with the clerk of this court showing that the four named Negroes had been properly enrolled on the voters list and that the defendants, with the approval of their attorneys, had designed a plan for the purpose of being able to show to the court at any time that full and conscientious compliance with the court's decree is being effectuated. Further, on November 18, 1960 two of the defendants, Dixon Oxford and Mrs. Emily Cook (Mrs. F. Lawson Cook, Sr.), through their attorneys, filed with the clerk of this court their supplemental report showing that James G. Raines had resigned as chief registrar; that his resignation had been accepted by the Judge of the Superior Courts of the Pataula Circuit; that Mansfield Matthews had been duly appointed as registrar and duly named chief registrar to succeed James G. Raines and that Howard Lee had been duly appointed a registrar to succeed William P. Smith who also had resigned. Said supplemental report concluded:

"It is the intention of these defendants, along with the registrars appointed in the order aforesaid to proceed with the registration of voters in Terrell County, Georgia in accordance with the decree of this court of September 14, [sic] 1960, and in all respects to use it as a guide and direction in the performance of their duties."

Prior to the entry of said findings of fact, conclusions of law and decree and on August 1, 1960 attorneys for plaintiff filed with the clerk their "Notice of Motion for Finding of Pattern or Practice Under Subsection (e) of 42 U.S.C.A. § 1971." Counsel for defendants promptly filed their "Partial Response" to said notice and insisted that said motion was premature in that there had been no finding by the court that any person had been deprived on account of race or color of any right or privilege secured by 42 U.S.C.A. § 1971(a). Under date of August 29 the court advised counsel that said motion could be heard at some later date and not at that time. Accordingly, on September 19, 1960 after the final decree of September 13, 1960, D.C., 189 F. Supp. 121, plaintiff's counsel filed their written request as follows:

"The Court having found in its order and decree of September 13, 1960, that certain persons had been deprived, on account of their race and color, of rights and privileges secured by subsection (a) of 42 U.S. C. 1971, it is respectfully requested that the Court make a further finding under subsection (e) of said section that such deprivations were and are pursuant to a pattern and practice. This request is based upon the evidence heretofore admitted at the trial of this action and upon all of the papers and pleadings heretofore filed by all parties."

Thereafter on September 27, 1960 the defendants filed their objections to said motion contending, inter alia, that the phrase "pattern and practice" is so vague and indefinite as to be incapable of enforcement; that the evidence would not justify a finding by the court that any deprivation was or is pursuant to a pattern or practice; that under Article III, Section 2 of the Constitution of the Unit-

ed States the Congress has not the constitutional power to impose on a district court of the United States an obligation to make findings or decisions which are not necessary to decide the case or controversy which is properly before it; that the issues forming the case or controversy before this court have been determined by the pleadings filed and the Congress has no power to impose upon this court an obligation to make a finding which is not necessary to the decision of the case before the court between the parties to said case; that the finding requested is not needed to support the original findings and decree, but, on the contrary, is separate, distinct and apart from the case or controversy before the court; that the statute 42 U.S.C.A. § 1971(e) is violative of the Constitution of the United States and particularly the 10th, 14th and 15th Amendments thereof and is not authorized by any power delegated by the states to the United States of America in that it allows the federal government to pass upon the qualifications of citizens to vote in state elections without any finding that the particular citizen has been denied the right to vote on account of his race or color; and that said subsection (e) is void, unconstitutional and of no effect for that:

"(a) It seeks to confer upon courts of the United States power to adjudicate matters which are not 'cases' or 'controversies' under article III of the Constitution of the United States;

"(b) It seeks to convert District Courts of the United States into registration boards;

"(c) It seeks to confer upon District Courts of the United States the power to determine who is qualified under State law to vote in all elections and so contravenes the Tenth Amendment to the Constitution of the United States which provides:

" 'The powers not delegated to the United States by the Constitution, nor prohibited by it to the

States, are reserved to the States respectively, or to the people';

"(d) It is not appropriate legislation under the Fourteenth or Fifteenth Amendments to the Constitution of the United States;

"(e) Congress has no power under the Constitution of the United States or any amendment thereto to exercise plenary power over voting in all elections;

"(f) Congress has no power to convert Federal District Courts into registration boards to register negroes and compel the States to recognize those negroes as qualified voters in their elections;

"(g) The proceedings authorized and required by the statute to be had subsequent to the finding by the court of a 'pattern or practice' lack the essential attributes of a 'case' or 'controversy' and therefore are not authorized by the Constitution of the United States to be carried on by a Federal Court."

Thereafter, and on October 27, 1960 the defendants filed two additional objections known as 13 and 14, 13 being that subsection (e) was approved by the President on May 6, 1960 and does not have retrospective operation and is not applicable to this action which was instituted in September of 1958; and 14 being that under the evidence in this case "no act of the remaining defendants with respect to the subject matter of the litigation occurred after May 6, 1960, and therefore the statute aforesaid is not applicable to the present action taken in connection with the undisputed evidence therein."

This pending motion for a finding as to pattern and practice has been thoroughly briefed by counsel for plaintiff and defendants and their briefs have included coverage of four questions propounded to counsel by the court by letter dated December 1, 1960 as follows:

"(1) When subsection e, added to 42 U.S.C. 1971 by the most recent amendment, says that 'the court shall

upon request of the Attorney General * * * make a finding whether such deprivation was or is pursuant to a pattern or practice', did Congress intend that the word 'shall' was mandatory or directory and permissive only?

"(2) Under the facts of this particular case should it be assumed that the defendants are going to comply fully with this court's injunction unless and until the contrary should be made to appear?

"(3) If such presumption should be indulged, is there any necessity that the court make the requested finding at this time?

"(4) In order to preserve a healthy federalism should such finding of pattern or practice vel non be deferred until such time, if ever, as a necessity and appropriateness therefor is made to appear, or should such finding be made at this time?"

Counsel for plaintiff advised the court by letter dated October 18, 1960 that:

"The plaintiff is willing to submit its request for the Court's ruling on the basis of the evidence already admitted in the case and the briefs which have been submitted by counsel for both parties. However, should the defendants request a hearing or should the court decide upon a hearing, we would prefer an early date."

And counsel for defendants advised the court by letter dated January 14, 1961 as follows:

"If the Court should decide against us with respect to all legal issues remaining in this case by reason of our fourteen grounds of objections, and by reason of the four questions which you propounded in your letter of December 1, 1960, there would still remain the 'factual issue' alluded to on page 14 of the plaintiff's brief as to which, under the statute, we would be given an 'opportunity to be heard.'"

▌ This court does not find it necessary to decide upon the merits of the objections urged by the defendants. This court's thinking as to the pending motion is indicated by its four above quoted questions propounded to counsel. This court does not believe that by the language of subsection (e) of 42 U.S.C.A. § 1971 the Congress of the United States intended to impose upon the district courts the mandatory duty of making a finding as to whether a previously found deprivation of rights or privileges was or is pursuant to a pattern or practice regardless of the district court's opinion as to the necessity or non-necessity of making such a finding. Courts of equity have always had broad powers of discretion. Courts of equity should be excellent judges as to what findings and what orders are appropriate and necessary in any particular case. Discretion is a traditional attribute of equity. "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs." Brown v. Board of Education, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955).

It is not unusual for the statutory "shall" to be interpreted as meaning "may", not mandatory but directory or permissive only. Section 205(a) of the Emergency Price Control Act of 1942 (56 Stat. 23, 50 U.S.C. App. Supp. II, §§ 901, 925) provided:

"Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the administrator that such person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other or-

der *shall* be granted without bond." (Emphasis supplied).

Construing that statute, the Supreme Court in the case of The Hecht Co. v. Bowles, Price Administrator, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944) held that notwithstanding the use of the word "shall" the grant of an injunction was not mandatory but was in the discretion of the court. The court, on page 329 of 321 U.S., on page 591 of 64 S.Ct., said:

"We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. City of Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 11 [88 L.Ed. 9]. The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. We do not believe that such a major departure from that long tradition as is here proposed should be lightly implied. We do not think the history or language of § 205(a) compel it."

See also Securities & Exchange Commission v. Mono-Kearsage Consolidated Mining Co., D.C., 167 F.Supp. 248, 260 (12); Perkins v. Cooper, 155 Okl. 73, 4 P.2d 64, 66; Fagan v. Robbins, 96 Fla. 91, 117 So. 863, 866; People ex rel. Morse v Nussbaum, 32 Misc. 1, 66 N.Y.S. 129, 133; and Cooper v. Hinrichs, 10 Ill. 2d 269, 140 N.E 2d 293, 295.

In this case after a lengthy trial discrimination was found. An appropriate injunction has been issued. The defendants, through their counsel, have assured this court that said injunction is going to be fully obeyed. The presumption is that it will be obeyed. If that presumption is correct it will never become necessary to make the finding as to pattern or practice as requested by the plaintiff. Should it develop that that presumption is incorrect and that contrary to said assurance said injunction is violated that will be soon enough to consider defendants' legal objections to the pending motion, and if said objections are not sustained to make a finding with respect to whether or not the deprivations heretofore found were and are pursuant to a pattern or practice. There is no necessity that the court make such finding at this time. Equity does not require the doing of a vain or useless thing. School Board of City of Charlottesville, Va. v. Allen, 240 F.2d 59, 64 (4th Cir. 1956); Gibson v. Board of Public Instruction of Dade County, 246 F.2d 913, 914 (5th Cir. 1957). In order to preserve a healthy federalism no more findings and decrees should be made in this area of conflict between federal law and state action than are necessary.

In People v. Nussbaum, supra, the court said on page 133 of 66 N.Y.S.:

"The claim is that under the present law the justice has no discretion in the matter, and must grant the order simply because it is asked for by the attorney general. It is true that the language of the act looks very much as if the legislature intended by it to provide for a sort of legislative mandamus against the justice to whom application for the order might be made. But, notwithstanding the law says that he shall grant the order, I think he is still charged with the duty of exercising a judicial discretion, in determining whether he should grant it or not in the specific case. The language means no more than if the act provided that

the justice 'may,' instead of 'shall,' grant the order. The legislature is as powerless to coerce the judicial action as the courts are to issue a mandamus against the governor or the legislature, each being independent of either of the others within their respective spheres of duty. People [ex rel. Broderick] v. Morton, 156 N.Y. 136, 50 N.E. 791, 41 L.R.A. 231."

Similarly in this case, this court feels charged with the duty of exercising a judicial discretion in determining whether to make a finding as to pattern or practice in this specific case. Particularly is this true in view of what would be the far-reaching consequences of a finding of deprivation pursuant to a pattern or practice, namely, conferring upon this federal court jurisdiction to pass upon the qualifications of a citizen to vote in State elections without any finding that the particular citizen has been denied the right to vote on account of his race or color, and conferring upon this federal court also the duty of passing upon such qualifications in the event any Negro within the affected area, Terrell County, applies to this court for an order declaring him qualified to vote and proves that he is qualified under state law to vote, and has, since such finding by the court, been (a) deprived of or denied under color of law the opportunity to register to vote, or otherwise to qualify to vote, or (b) found not qualified to vote by any person acting under color of law.

Accordingly, plaintiff's motion that this court at this time make a further finding that the deprivations heretofore found were and are pursuant to a pattern or practice is hereby denied, but this denial is without prejudice to the right of the plaintiff to renew said pending motion by calling it up for hearing on reasonable notice and a showing that there are any violations of the final decree heretofore entered in this case, and, accordingly, this case and said motion are retained on the docket and this court retains jurisdiction of this entire cause, including said motion, for the purpose of making any and all additional findings and conclusions, and of entering any and all additional orders as may become necessary or appropriate for the enforcement, modification or implementation of said final decree, and of passing upon said motion and any and all objections thereto, and for any other lawful purpose.